# 23-6918

_____

In The
United States Court Of Appeals
For the Second Circuit
_____

UNITED STATES OF AMERICA,
*Appellee,*

v.

THOMAS PITERA, RICHARD DAVID, THOMAS CARBONE, ANTHONY FLOTTE, WILLIAM BRIGHT,  FRANK GANGI, LLOYD MODELL, FRANK MARTINI, MANNY MAYA, MICHAEL CASSESSE, LOUIS MENA, ANGELO FAVARA, JUDITH HAIMAWITZ, RAY ALBERTINA, DENNIS MICHAEL HARRIGAN,
*Defendants,*
VINCENT GIATTINO,
*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK - BROOKLYN
The Honorable Margo K. Brodie, Case No. 90-CR-424(MKB)
_____

**BRIEF AND SPECIAL APPENDIX OF APPELLANT**
_____

JOHN VINCENT SAYKANIC, ESQ.
NJ BAR ID NO.: 045801984
624 GROVE STREET
CLIFTON, NEW JERSEY 07013
TEL: (973) 472-5863
FAX: (973) 614-0386
E-MAIL: JohnVincentEsq@aol.com
*Counsel for Appellant Vincent Giattino*

**TABLE OF CONTENTS**

**Page No.**

TABLE OF AUTHORITIES ……………………………………………... v

JURISDICTIONAL STATEMENT …………………………………………... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ……………… 2

STATEMENT OF THE CASE ……………………………………………… 2

    A. Nature of the Case and Relevant Procedural History …………………... 3

        1. Procedural History as to Substantive Offenses ………………….. 3

        2. Procedural History as to Motions for Compassionate Release …... 5

    B. Statement of the Facts Relevant to the Issues Presented for Review …… 6

        1. Facts Relevant to Mr. Giattino's Medical Condition …………….. 6

        2. Facts Relevant to Underlying Case of Conviction ………………. 6

    C. Summary of Relevant Evidence Since the Trial and PSR …………….. 7

SUMMARY OF THE ARGUMENT …………………………………………... 8

LEGAL ARGUMENT

    POINT I

    THE DISTRICT COURT ERRED IN DENYING MR.
    GIATTINO'S MOTION FOR COMPASSIONATE RELEASE
    UNDER 18 U.S.C. § 3582(c)(1)(A)(i) …………………………………….. 9

i

SUBPOINT A

MR. GIATTINO'S MEDICAL CONDITIONS ARE
"EXTRAORDINARY AND COMPELLING CIRCUMSTANCES"
PARTICULARLY WHEN CONSIDERED WITH THE OTHER
FACTS SUPPORTING RELEASE …………………………………… 9

   1. Standard of Review …………………………………………………..9

   2. The Exhaustion Requirement Has Been Fully Met ……………….. 9

   3. Mr. Giattino's Medical Conditions are Extraordinary and
     Compelling Circumstances Warranting Granting Relief …………. 9

   4. Pursuant to 18 U.S.C. § 3582(c)(1)(A), this Court Can
     Consider the "Full Slate of Extraordinary and Compelling
     Reasons" …………………………………………………………… 11

   5. The Analytical Framework ……………………………………… 12

   6. The November 1, 2023 Amendments to the Sentencing
     Guidelines --Amendment 814: Compassionate Release ………… 13

SUBPOINT B

ADDITIONAL INFORMATION RELATED TO THE
MURDERS OF BURDI AND JOHNSON SUPPORT A
REDUCED SENTENCE AS THIS CONSTITUTES
EXTRAORDINARY AND COMPELLING
CIRCUMSTANCES THAT MERIT RELEF UNDER 18
U.S.C. § 3553(a) …………………………………………………… 15

     1. The district court's decision ………………………… 15

     2. The Burdi murder ……………………………………… 16

     3. The Wilfred Johnson murder ………………………… 17

ii

SUBPOINT C

THE DISTRICT COURT ABUSED ITS DISCRETION IN
NOT REDUCING MR. GIATTINO'S SENTENCE TO 35
YEARS AS *UNITED STATES V. RUSSO*, Nos. 92-CR-351,
90-CR-1063, 2022 WL 17247005 (E.D.N.Y. Nov. 28, 2022);
AND OTHER CASES SUCH AS *UNITED STATES
V. VINCENT ASARO*, No. 17-cr-127(ARR) (E.D.N.Y. April 17,
2020), *UNITED STATES V. ALAN GRECCO*, Crim. No.
89-00250 (D.N.J. Nov. 18, 2022), 2022 WL 17080748 (D.N.J. Nov.
18, 2022) AND ANTHONY SENTER'S RELEASE SUPPORT
MR. GIATTINO'S RELEASE …………………………………….. 19

  1. Anthony Russo's Reduction of His Life Sentence for
     Murders and other Violent Crimes to 35 Years' Warrants
     Such a Reduction in Mr. Giattino's Case …………………. 19

  2. Paul Moore's Case and Reduction of Life Sentence for
     Murder and Other Violent Crimes to 35 Years'
     Imprisonment ………………………………………….. 21

  3. In Addition to the Cases of Anthony Russo and Paul
     Moore, Other Similar Cases Warrant a Reduction
     in Mr. Giattino's Sentence ……………………………….. 21

SUBPOINT D

THE DISTRICT COURT ABUSED ITS DISCRETION IN NOT
REDUCING MR. GIATTINO'S SENTENCE TO 35 YEARS AS
HERE, THE "TOTALITY OF CIRCUMSTANCES" POINTS TO
THE EXISTENCE OF "EXTRAORDINARYAND COMPELLING
REASONS" FOR A REDUCTION OF SENTENCE ……………… 23

  1. Mr. Giattino's Close Relationship with his Daughter,
     Brigitte Giattino …………………………………………... 25

  2. Mr. Giattino's Rehabilitation While Incarcerated Over
     the Last 30 Years ………………………………………… 28

iii

      3. Vincent Giattino's Good Character, Remorse and
         Constant and Unwavering Support from his Family ……… 34

SUBPOINT E

A REDUCTION IN MR. GIATTINO'S SENTENCE TO 35
YEARS' IMPRISONMENT IS CONSISTENT WITH
THE PURPOSES AND OBJECTIVES OF 18 U.S.C. § 3553(a) ….. 42

SUBPOINT F

OTHER COURTS HAVE REDUCED LIFE SENTENCES
OF THOSE CONVICTED OF VIOLENT CRIMES AND
MURDERS AS PART OF ORGANIZED CRIME AND WITH
"FAR GREATER CULPABILITY" THAN MR. GIATTINO ……. 44

SUBPOINT G

SENTENCING DISPARITIES COMPEL A REDUCTION
OF SENTENCE …………………………………………………… 51


CONCLUSION …………………………………………………….. 52

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ……………………… 53

CERTIFICATE OF FILING AND SERVICE …………………………………… 53

SPECIAL APPENDIX TABLE OF CONTENTS ……………………………….. 55

iv

## <u>TABLE OF AUTHORITIES</u>

**<u>Pages(s)</u>**

**Cases:**

*Giattino v. United States*,
  31 Fed.Appx. 7 (2d Cir. 2002) …………………………………………... 4

*Graham v. Florida*,
  560 U.S. 48 (2010) …………………………………………………….. 39,40

*In re Sims*,
  534 F.3d 117 (2d Cr. 2008) …………………………………………… 1

*Pepper v. United States*,
  562 U.S. 476 (2011) …………………………………………………… 28

*United States v. Michael F. Alexander*,
  2020 WL 6268136 (N.D. Ohio Oct. 26, 2020) ……………………….. 38

*United States v. Anderson*,
  2020 WL 2849483 (S.D.N.Y. June 2, 2020) ………………………….. 38

*United States v. Shane Stephen Anello*,
  2020 WL 3971399 (W.D. Wash. July 14, 2020) ……………………… 38

*United States v. Vincent Asaro*,
  No. 17-cr-127(ARR), 2020 U.S. Dist. LEXIS 68044 (E.D.N.Y.,
  Apr. 17, 2020) …………………………………..…………………………19,22

*United States v. Austin*, 06 Cr. 991 (JSR),
  2020 WL 3447521 (S.D.N.Y. June 22, 2020) …………………….…..... 28

*United States v. Borden*,
  564 F.3d 100 (2d Cir. 2009) ……………………….............................. 1,9

*United States v. Brooker*,
  976 F.3d 228 (2d Cir. 2020) ……………………………………………... 1,9,11,13

v

*United States v. Cantu-Rivera*,
  No. H-89-201, 2019 WL 2578272 (S.D. Tex. June 24, 2019) ................. 12

*United States v. Colon*,
  2021 U.S. Dist. LEXIS 41244 (E.D.N.Y., March 4, 2021) ................... 11

*United States v. Cox*,
  89 Cr. 196 (GAF) (W.D.M.O. June 17, 2021) ................................. 45

*United States v. Curtis*,
  03 Cr. 533 (BAH) (D.D.C. Apr. 22, 2020) .................................... 48

*United States v. DiNome*,
  954 F.2d 839 (2d. Cir. 1992) .............................................. 23

*United States v. Ebbers*,
  432 F. Supp. 3d 421 (S.D.N.Y. 2020) ...................................... 11

*United States v. Fisher*, 493 F. Supp. 3d 231 (S.D.N.Y. 2020) ...................... 45

*United States v. Giattino*,
  104 F.3d 354 (2d Cir. 1996) ............................................... 4

*United States v. Gluzman*,
  96 Cr. 3223 (LJL) (S.D.N.Y. July 23, 2020) ............................... 46

*United States v. Alan Grecco*,
  Crim. No. 89-00250 (D.N.J. Nov. 18, 2022), 2022 WL 17080748
  (D.N.J. Nov. 18, 2022) ................................................ 19,22

*United States v. Holloway*,
  965 F.2d 660 (2d Cir. 2020) .............................................. 1,9

*United States v. Lizardi*,
  11 Cr. 1032 (PAE) (S.D.N.Y. Oct. 9, 2020) ................................ 12

*United States v. Mel*,
  2020 WL 204174 (D. Md. Apr. 28, 2020) .................................... 52

vi

*United States v. Millan*,
   91 Cr. 685(LAP) (S.D.N.Y. April 6, 2020) ………………………………… 48

*United States v. Moyhernandez*,
   4 4th. 195(2d Cir. 2021) …………………………................................ 1

*United States v. Nugent*,
   685 Fed Appx. 17 (2d Cir., March 30, 2017) …………............................ 1

*United States v. Panon*,
   89 Cr. 346(LAP) (S.D.N.Y. August 4, 2020) ……………………………. 47

*United States v. Perez*,
   02 Cr. 7 (JBA)(D. Conn., March 4, 2021) ………………………………… 45

*United States v. Phillips*,
   469 F.Supp.3d 180 (S.D.N.Y. 2020) ……………………………………… 12

*United States v. Piggott*,
   No. 94 Cr. 417, 2022 WL 118632 (S.D.N.Y. Jan. 12, 2020) ……………… 50

*United States v. Qadar*,
   00 Cr. 603, 2021 WL 3087956 (E.D.N.Y. July 22, 2021) ………………… 40

*United States v. Quinones*,
   511 F.3d 289 (2d Cir. 2007) ……………………………………………….. 47

*United States v. Ramirez*, No. 98 Cr. 927, 2021 WL 5233512 (S.D.N.Y.
   Nov. 10, 2021) ……………………………………………………………… 44

*United States v. Rengifo*,
   No. 9 Cr. 109, 2021 WL 5027334 (S.D.N.Y. Oct. 29, 2021) ……………... 41

*United States v. Rios*,
   94 Cr. 112 (JBA) (D. Conn., December 8, 2020) …………………………… 45

*United States v. Robinson*,
   2022 US Dist. LEXIS 162940 (ND Ill. Sep. 9, 2022, No. 89 CR 908-31) .. 49

*United States v. Rodriguez*,
  492 F. Supp. 3d 306, 2020 U.S. Dist. LEXIS 181004,
  2020 WL 5810161 (S.D.N.Y. Sept. 30, 2020) ........................................ 39,41

*United States v. Rodriguez*, 00 Cr. 761 (JSR) (S.D.N.Y. September 30,
  2020) …………………………………………………….....… 44-45

*United States v. Russo*, Nos. 92-CR-351, 90-CR-1063, 2022 WL
  17247005 (E.D.N.Y. Nov. 28, 2022) ………………………………..... 19-21

*United States v. Scott*,
  F. Supp. 3d 629, 635 (E.D.N.Y. 2017) …………………………………… 50

*United States v. Serrano*,
  2022 WL 1443688 (S.D.N.Y. 2022) ………………………………... 39,41

*United States v. Sessa*,
  821 F. Supp. 870, 872 (E.D.N.Y. 1993), *aff'd sub nom. United States
  v. Amato*, 15 F.3d 230 (2d Cir. 1994), and *aff'd sub nom. United
  States v. Orena*, 32 F.3d 704 (2d Cir. 1994), and *aff'd*, 41F.3d 1501
  (2d Cir. 1994) …………………………………………………….. 42-43

*United States v. Tellier*,
  92 Cr. 869 (S.D.N.Y. May 10, 2022) …………………………………… 44

*United States v. Tidwell*, 476 F. Supp. 3d 66 (E.D. Pa. 2020) …………………… 45

*United States v. Thrower*,
  495 F. Supp. 3d 132 (E.D.N.Y. 2020) .................................................... 12-13

*United States v. Torres*,
  87 Cr. 593(SHS), 2020 WL 2815003 (S.D.N.Y. June 1, 2020) …………… 28

*United States v. Underwood*,
  No. 88 Cr. 822, 2021 WL 3204834 (S.D.N.Y. Jan. 15, 2021) ………… 44-45

*United States v. Vargas*,
  502 F.Supp. 3d 820 (S.D.N.Y. 2020) …………………………………… 39

*United States v. Robert Willis*,
    2020 WL 6196165 (D.Kan. Oct. 22, 2020) ………………………………… 48

**Statutes:**

18 U.S.C. § 2 ……………………………………………………………… 3

18 U.S.C. § 841(a)(1) …………………………………………………... 3

18 U.S.C. § 924(c) ………………………………………………………… 3

18 U.S.C. § 1952B ………………………………………………………… 4

18 U.S.C. § 1952B(a)(1) …………………………………………………... 3

18 U.S.C. § 1952B(a)(5) …………………………………………………... 3

18 U.S.C. § 1962(c) ……………………………………………………… 3

18 U.S.C. § 3553(a) …………………………………………… *passim*

18 U.S.C. § 3623 ………………………………………………………... 3

18 U.S.C. § 3582(c)(1)(A)(i) …………………………………….. *passim*

21 U.S.C. § 841(a)(1) …………………………………………………... 3

21 U.S.C. § 841(b)(1)(A)(B) and (C) …………………………………... 3

21 U.S.C. § 846 ………………………………………………………… 3

28 U.S.C. § 1291 ………………………………………………………... 1

**Rules:**

*Fed. R. App. P.* 32(a)(5) ……………………………………………… 53

*Fed. R. App. P.* 32(a)(6) …………………………………………………………… 53

*Fed. R. App. P.* 32(f) ………………………………………………………….. 53

**Sentencing Guidelines:**

U.S.S.G. § 1B1.1 …………………………………………………………… 13

U.S.S.G. § 1B1.13 ...................................................................... 11-12

U.S.S.G. § 1B1.13(b)(1)(C) …………………………………………………… 14

U.S.S.G. § 1B1.13(b)(3)(A) …………………………………………………... 14

U.S.S.G. § 1B1.13(b)(5) …………………………………………………… 14

**Other Authorities:**

New York Times article (May 6, 1992) - *"Specter of Execution Hangs Over Murder Trial"* ………………………………………………………….. 7

New York Times article (June 26, 1992) - "Reputed Mobster Guilty in Six Narcotics Murders" …………………………………………………………... 7

U.S. Sentencing Comm., *Interactive Data Analyzer,* https://ida.ussc.gov/analytics/saw.dll?Dashboard ……………… 40

U.S. Sentencing Comm., The Effects of Aging on Recidivism Among Federal Offenders,https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivsm-Age.pdf ....50

## JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant 28 U.S.C. § 1291 over this appeal from the district court's July 31, 2023 final Memorandum & Order denying appellant Vincent Giattino's motion for compassionate release, filed under 18 U.S.C. § 3582(c)(1)(A)(i).[2] *See United States v. Nugent*, 685 Fed. Appx. 17, 19-20 (2d Cir., March 30, 2017). To the extent that a legal question is raised as to whether the district court had the authority to consider facts that have arisen since the judgment and conviction as "extraordinary and compelling circumstances" under 18 U.S.C. § 3553(a), this Court's review if *de novo. United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020); *United States v. Holloway*, 965 F.2d 660, 664 (2d Cir. 2020).[3]

The district court's finding of facts are subject to an abuse of discretion standard. *United States v. Borden*, 564 F.3d 100, 104-105 (2d Cir. 2009).

---

[2] The Special Appendix attached to this brief is cited "SPA." The separate Appendices are cited "1A," "2A," and so on.

[3] As explained in *United States v. Borden*, 564 F.3d 100, 104 (2d Cir. 2009) (quoting *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008)) (articulating the abuse-of-discretion standard), "A decision on a motion for a reduced sentence remains subject to appellate review; where the decision evinces 'an erroneous view of the law' or 'a clearly erroneous assessment of the evidence,' or where it falls outside 'the range or permissible decisions,' will result in a reversal. *See United States v. Moyhernandez*, 5 4th 195, 205 (2d Cir. 2021) (finding no requirement to consider § 3553(a) factors; but discretion in considering those factors is relevant to the § 3582 motion is not unfettered and is subject to thorough appellate review).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether the district court erred in denying Mr. Giattino's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i) and under the sentencing factors of 18 U.S.C. § 3553(a)?

## STATEMENT OF THE CASE

Over 30 years ago, Mr. Giattino was incarcerated and sentenced to spend the rest of his life in prison. At the time, he had been married to Shirley and was raising his daughter, Brigitte, who had just began walking. Now, over 70 years old and experiencing declining health, he is in the final years of his life. He is extremely remorseful for his past actions and who he was, and lives with deep regret and guilt. However, over the more-than-three decades of enduring a life sentence, he has stayed connected with his supportive family, engaged in programming within prisons, encouraged and helped other inmates, helped raise Brigitte through daily calls and regular visits (experienced her birthdays, milestones and accolades in her life via telephone calls), and fought to keep alive his hope of one day being released.

Mr. Giattino has been denied compassionate release three times by the district court; Mr. Giattino wishes to cite that in her second denial, the Honorable Margo K. Brodie acknowledged Mr. Giattino's tremendous rehabilitation and transformation over the past 31 years while he served a life sentence:

> . . . the Court acknowledges and applauds Giattino's "rehabilitation in the face of a life sentence" and his

2

mentorship to other inmate, (Def.'s Reply 2-3), his good conduct in prison, (*id.*), his ability to maintain strong and close relationships with his family, particularly his daughter, (id.), and his support network and reentry plan, (*id.*). Nevertheless, the section 3553(a) factors do not warrant a modification of Giattino's sentence in light of the seriousness of his offenses. [Docket Entry No. 734; A282-283].

Since this July 26, 2022 decision two important developments justify a reversal and compassionate release--the first, newly discovered evidence as to the two homicides; and the second, recent case law and changes in the Guidelines.

## A. Nature of the Case and Relevant Procedural History

### 1. Procedural History as to substantive offenses.

On June 1, 1990, Mr. Giattino was charged with 15 others in a racketeering conspiracy which included multiple homicides. Mr. Giattino was arrested on July 29, 1991 in Florida and later released on bail pending trial. Following a jury trial before the Honorable Reena Raggi, U.S.D.J., on November 5, 1992, Mr. Giattino was convicted of racketeering, murder, narcotics, and firearms offenses in violation of 18 U.S.C. §§ 924(c), 1952B(a)(1) and (5), 1962(c), 3623, and 2; and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A),(B), and (C) and 846. His conviction was based entirely on cooperator testimony; specifically, the testimony of Frank Gangi.

On February 26, 1993, Mr. Giattino was sentenced to five concurrent life terms of imprisonment, two 10-year terms to be served concurrently with the life terms, and one 30-year term to be served consecutively to the other terms, to be

3

followed by 23 years of supervised release, and he was ordered to pay a $200,000 fine. *See United States v. Vincent Giattino*, 104 F.3d 354 (2d Cir. 1996) [this unpublished opinion is annexed at A371-373]. Mr. Giattino has been incarcerated since the jury's verdict on November 5, 1992. [Docket Entry No. 721-4; A196].

On appeal, Mr. Giattino contended that there was insufficient evidence under 18 U.S.C. § 1952B and that the Government failed to disclose *Brady* material. On November 5, 1996, the Second Circuit affirmed. *Ibid.*

Judge Raggi subsequently denied a Section 2255 motion dated April 16, 1997. However, Judge Raggi granted a certificate of appealability on both timeliness and ineffective assistance of counsel. *See Giattino v. United States,* 31 Fed.Appx. 7 (2d Cir. 2002). On February 2, 2002, the Second Circuit affirmed. *Ibid.*

Mr. Giattino wishes to emphasize that, following his arrest, he was released on bail. He was offered a pre-Guidelines plea of 10 years' incarceration (perhaps three or four years of incarceration). As stated in the "Affirmation of James R. Froccaro, Esq." (Mr. Giattino's trial and appellate attorney):

> 3. The Government made an oral plea offer to Mr. Giattino at some point prior to his trial. It was a pre-Guidelines offer of 10 years' imprisonment. I discussed it with Mr. Giattino, who ultimately declined it and proceeded to trial.
>
> 4. Prior to Mr. Giattino's trial, he was released on bail, and remained free without incident. He was ordered remanded upon the jury's verdict in 1992. He has been incarcerated ever since. [Docket Entry No. 721-4; A196].

4

Mr. Giattino's punishment was drastically different from what the Government offered him, and offered his co-defendants charged with murders. Additionally, it was grossly higher than the sentences imposed on his co-defendants by way of plea agreements. Aside from the lead and capital defendant Thomas Pitera, no defendant received more than 20 years, including those convicted of murders. Accordingly, due to the "trial penalty," "extraordinary and compelling reasons" exist warranting "compassionate release" *or* a reduction in his sentence.

**2. Procedural History as to Motions for Compassionate Release.**

On June 22, 2020, following passage of the First Step Act of 2018, Mr. Giattino requested a Compassionate Release/Reduction in Sentence to the Warden of FCI Allenwood-Medium due to his elderly status and medical condition. [A81]. On July 2, 2020, Warden Catricia L. Howard denied the request. [A98].

By way of *pro se* application (Docket Entry No. 711 filed on September 2, 2020), Mr. Giattino moved for Compassionate Release and Home Confinement. [A79-137]. On October 19, 2020, the Government filed its opposition. [Docket Entry No. 719; A138-151]. On November 19, 2020, Judge Brodie in a "Memorandum & Order" denied the first motion for compassionate release. [Docket Entry No. 723; A216-221].

On February 14, 2022, Mr. Giattino filed a "Renewed Motion for 'Compassionate Release' *or* Reduction of Sentence." [Docket Entry No. 726; letter

brief at A222-241; Docket Entry No. 726-1; Exhibits at 242-253]. On July 26, 2022, Judge Brodie in a "Memorandum & Order" denied the second motion. [Docket Entry No. 734; SPA1; A273-285].

On November 25, 2022, Mr. Giattino filed a "Renewed Motion for Reduction of Sentence" relying primarily on the recent November 2, 2022, decision of the Honorable Frederic Block related to the reduction of the life sentences for Anthony Russo and Paul Moore. [Docket Entry No. 735, brief at SPA7; A286-294; Exhibits at A295-325]. On July 31, 2023, Judge Brodie in a "Memorandum & Order" denied the third motion for compassionate release. [Docket Entry No. 746; SPA 20; A355-366].

Mr. Giattino filed a timely Notice of Appeal. [Docket Entry No. 747; A367].

**B. Statement of Facts Relevant to the Issues Presented for Review:**

**1. Facts Relevant to Mr. Giattino's Medical Condition:**

Mr. Giattino, now 70 years old, has been continuously incarcerated for this case for over thirty years. As the Government concedes, he is a Care Level II inmate who requires chronic care and is also on a "High Risk Health List" at FCI Allenwood. His medical condition is discussed further in *Point I*, *Subpoint A*, *infra*.

**2. Facts Relevant to the Underlying Case of Conviction:**

Mr. Giattino was an associate of the Bonnano family and was accused of being part of a crew headed by an organized crime "captain"--Thomas Pitera (against

6

whom the Government sought the death penalty).[4] Mr. Giattino was primarily involved in the distribution of cocaine and marijuana. He has not, and never became, a "made man" – someone initiated into a crime family through the sponsorship of another "made man" and murdering someone. He also had a limited criminal history. According to the Government, he "took part" in the murders of Phyllis Burdi and Wilfred "Willie Boy" Johnson.

Mr. Giattino never planned or actually committed either murder. Had Mr. Giattino actually killed Burdi and or Johnson, he would likely have become a "made man." However, that never happened. Additional and significant mitigating information related to the murders of both Burdi and Johnson is discussed, *infra*.

**C. Summary of Relevant Evidence Since the Trial and PSR:**

Since the time of Mr. Giattino's conviction and, in fact, within just the past year, significant new evidence has emerged as to the two murders (the Burdi and Johnson murders) of which he was convicted that substantially mitigate his

---

[4] As argued by the Government at his trial, "[Pitera] murdered almost everyone himself, taking delight in being the executioner and then the butcher of the victims' bodies." *See "Specter of Execution Hangs Over Murder Trial,"* New York Times (May 6, 1992). [Docket Entry No. 721-5; A199-201]; PSR ¶ 18. On June 25, 1992, after a two-month capital trial, which included multiple acts of murder, narcotics trafficking, and various firearms offenses related to his leadership role in a racketeering conspiracy (the Pitera crew of the Bonanno family), Mr. Pitera was convicted. *Id.* and "Reputed Mobster Guilty in Six Narcotics Murders." New York Times (June 26, 1992). [Docket Entry No. 721-5; A203-205].

involvement. Multiple interviews with former underboss or "second in command" of the Gambino family and Government cooperator, Salvatore "Sammy the Bull" Gravano, has yielded new facts reflected in his sworn declaration. (See Docket Entry No. 744; 349-350]. Simply put, Mr. Giattino did not directly participate in either murder and shoot and kill Burdi or Johnson (discussed in detail, *infra*).

## SUMMARY OF THE ARGUMENT

The district court abused its discretion in denying compassionate and a reduction in sentence release due to: 1) Mr. Giattino's advanced age and a host of very serious medical ailments, along with the still present COVID threat; 2) newly discovered information related to the murders of Burdi and Johnson; 3) new case law and Guidelines; 4) the "totality of the circumstances" including Mr. Giattino's extraordinary rehabilitative efforts and good conduct in prison, along with his very strong and close familial ties and support; 5) the fact that a reduction in sentence to 35 years is consistent with the purposes and objectives of 18 U.S.C. § 3553(a); 6) the fact that other courts have reduced life sentences of those convicted of violent crimes and murders as part of organized crime and with far greater culpability than Mr. Giattino; and 7) sentencing disparities compel a reduction of sentence.

## LEGAL ARGUMENT

## POINT I

**THE DISTRICT COURT ERRED IN DENYING MR. GIATTINO'S MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)(i)**

## SUBPOINT A

**MR. GIATTINO'S MEDICAL CONDITIONS ARE "EXTRAORDINARY AND COMPELLING CIRCUMSTANCES" PARTICULARLY WHEN CONSIDERED WITH THE OTHER FACTS SUPPORTING RELEASE**

### 1. Standard of Review

The district court's findings as to the extent of its authority in evaluating the motion is a legal issue, subject to *de novo* review. *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020); *United States v. Holloway*, 965 F.2d 660, 664 (2d Cir. 2020). The district court's findings of fact are subject to an abuse of discretion standard of review. *United States v. Borden*, 564 F.3d 100, 104-105 (2d Cir. 2009).

### 2. The Exhaustion Requirement Has Been Fully Met:

The Government does not dispute that Mr. Giattino fully exhausted his administrative rights under 18 U.S.C. § 3582(c)(1)(A).

### 3. Mr. Giattino's Medical Conditions are Extraordinary and Compelling Circumstances Warranting Granting Relief

Mr. Giattino's myriad of ailments include: (1) asthma, which requires the use of an albuterol inhaler; (2) high blood pressure, which requires the prescription

9

medication Lisinopril; (3) diabetes, type II with ophthalmic manifestations, 250.50; (4) a heart condition; (5) circulatory conditions; (6) morbid obesity, 278.01 with a BMI over 40; (7) hyperlipidemia, mixed, 272.2 (high cholesterol)l; and (8) the necessity of use of a C-Pac machine to aid in a normal sleep pattern. [Medical records dated April 20, 2020 through June 22, 2020; Document Entry No. 711 at A99-104]. Due to his declining health, which also includes the need for two knee replacements and early-stage Alzheimer's, "extraordinary and compelling" reasons exist. Mr. Giattino has an ever-growing fear that he may die in prison--"death by incarceration"--and that he will never see his family again outside of prison.

The COVID pandemic, with other iterations, will unquestionably be a large part of society-at-large and prison populations in particular. The Government conceded that COVID-19 posed a serious threat to Mr. Giattino if he became infected: "The government acknowledges that the defendant presents risk factors that place him in a heightened risk category with respect to COVID-19." [Docket Entry No. 719; A149]. Mr. Giattino's trial and appellate attorney James R. Froccaro has also attested to the fact that "Mr. Giattino suffers from several serious medical conditions and is at "high risk" of death or serious health consequences if he becomes infected with COVID-19." [Docket Entry No. 721-4; A196].

Mr. Giattino is a Care Level II inmate who requires chronic care. As written in a Memorandum dated October 25, 2020, by FCI Allenwood Recreation Specialist

B. Oberdorf: "I think given his age and 'High Risk' health he should be highly considered for a release due to Covid-19." [Docket Entry No. 721-2 at A186].

**4. Pursuant to 18 U.S.C. § 3582(c)(1)(A), this Court Can Consider the "Full Slate of Extraordinary and Compelling Reasons"**

With the First Step Act of 2018, Congress amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to seek "compassionate release" directly from federal courts rather than exclusively from the Bureau of Prisons ("BOP"). *United States v. Ebbers*, 432 F. Supp. 3d 421, 422-23 (S.D.N.Y. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)." *United States v. Colon*, 2021 U.S. Dist. LEXIS 41244, *2 (E.D.N.Y., March 4, 2021). U.S.S.G. § 1B1.13 and its corresponding commentary (1) sets out various circumstances that present extraordinary and compelling reasons justifying release; and (2) requires that a defendant not be a danger to the community. *Id.* § 1B1.13(1)–(3) & cmt. n.1(A)–(D).[5]

Consistent with *Brooker*, "in assessing a § 3582(c) motion brought directly by a defendant, [this] Court is not constrained by either § 1B1.13's enumeration of

---

[5] This Circuit recently clarified that § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *United States v. Brooker*, 976 F.2d 228 (2d Cir. 2020); *see also id.* at *7 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

11

extraordinary and compelling reasons, or its separate requirement that the defendant seeking release not pose any danger to the community." *United States v. Lizardi*, 11 Cr. 1032 (PAE) (S.D.N.Y. October 9, 2020). Rather, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(A)(i), [this] Court may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Brooker*, 2020 WL 5739712, at *7. *See United States v. Phillips*, 469 F.Supp. 3d 180, 184 (S.D.N.Y. 2020); *United States v. Cantu-Rivera*, No. H-89-201, 2019 WL 2578272, at *2 (S.D. Tex. June 24, 2019).

### 5. The Analytical Framework:

*United States v. Thrower*, 495 F.Supp. 3d 132, 137-138 (E.D.N.Y. 2020) succinctly set out the established framework for defendant's burden and the court's analysis as to a motion for compassionate release under the First Step Act as follows:

> . . . defendants must show: (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or that thirty days have elapsed "from the receipt of such a request by the warden of [their] facility, whichever is earlier"; (2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment; (3) that these reasons outweigh "the factors set forth in section 3553(a) to the extent that they are applicable"; and (4) that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)
>
> \*　　\*　　\*
>
> . . . in determining what constitutes "extraordinary and compelling reasons," a district court has "discretion" to consider "the full slate" of arguments that defendants present to support a sentence reduction. *Brooker*, *supra*.

12

*      *      *

. . . Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction. 18 U.S.C. § 3582(c)(1)(A).

These factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant:

(2) the need for the sentence imposed --

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.]. . .

(5) any pertinent [Sentencing Commission] policy statement . . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense. *Id.* § 3553(a). A sentence reduction is consistent with the Sentencing Commission's policy statements if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The § 3142(g) factors are largely duplicative of those in § 3553(a), but they also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1)-(4). *United States v. Thrower*, 495 F.Supp. 3d 132, 137-138 (E.D.N.Y. 2020).

**6. The November 1, 2023 Amendments to the Sentencing Guidelines -- Amendment 814: Compassionate Release**

Effective November 1, 2023, § 1B1.13 [Reduction in Term of Imprisonment under 18 U.S.C. 3582(c)(1)(A)] was amended to expand the list of "extraordinary and compelling reasons" for compassionate release in five ways--the amendment:

13

(1) adds "medical circumstances" subcategories;[6] (2) modifies the "family circumstances" category;[7] 3) adds a "victim of abuse" category;[8] (4) revises the "other reasons" category;[9] and (5) adds an "Unusually Long Sentences" category, permitting consideration of non-retroactive changes in law in limited circumstances. See https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf.

---

[6] **Additional Medical Circumstances Considered -** to include long-term care and circumstances from COVID-19 (and other outbreaks of infectious disease). *See* U.S.S.G § 1B1.13(b)(1). With regard to long-term care, the defendant must be "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G § 1B1.13(b)(1)(C).

[7] **Additional "Family Circumstances" Considered -** revises the "family circumstances" ground in three ways. It expands the provision relating to the death or incapacitation of the caregiver of a defendant's minor child to include a child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition. *See* U.S.S.G. § 1B1.13(b)(3)(A). Also, the amendment creates a new provision that applies when a defendant's parent is incapacitated and the defendant would be the only available caretaker.

[8] **New "Victim of Abuse" Category -** addresses instances where an individual in custody has been the victim of sexual assault by a BOP correctional officer, employee or contractor, or any other individual with custody/control over defendant.

[9] **Modified "Other Reasons" Category -** This broad catchall provision is retained in the amendment and gives courts the ability to consider other reasons similar in gravity to those enumerated. U.S.S.G. § 1B1.13(b)(5) (Proposed Amendment 814).

## SUBPOINT B

**ADDITIONAL INFORMATION RELATED TO THE MURDERS OF BURDI AND JOHNSON SUPPORT A REDUCED SENTENCE AS THIS CONSTITUTES EXTRAORDINARY AND COMPELLING CIRCUMSTANCES THAT MERIT RELEF UNDER 18 U.S.C. § 3553(a)**

Since Mr. Giattino's conviction and within the past year, significant new evidence has emerged by way of a declaration of Salvatore Gravano made in May 2023 as to the two murders of which Mr. Giattino was convicted that substantially mitigate his involvement. [Docket Entry No. 744; 349-350]. Simply put, Mr. Giattino did not directly participate in either murdering or shooting and killing Burdi or Johnson. Nor was he involved in the organizing or planning of either murder.

**1. The district court's decision.**

The district court wrote:

> In addition, the Court does not find the additional information regarding Giattino's murder convictions compelling. As an initial matter, Giattino raises this argument for the first time in his reply brief, but the Court need not consider new arguments made in a reply brief . . . Nevertheless, Giattino's additional evidentiary submission does not warrant a sentence reduction. The evidence consists of a declaration from Salvatore "Sammy the Bull" Gravano, the underboss of the Gambino crime family, stating that to his knowledge, he has "never heard Vincent Giattino's name mentioned" in connection with the murders of Burdi and Johnson. (Decl. of Salvatore Gravano ("Gravano Decl.") ¶¶ 5-9, annexed as Ex. A to Def.'s Reply, Docket Entry No. 744.) Gravano's declaration regarding what he remembers hearing about

15

murders that occurred almost thirty-five years ago does not cast doubt on Giattino's conviction. Giattino was convicted of RICO murders after an extensive jury trial and significant evidence was presented against him and his co-defendants. In addition, a jury convicted Giattino of six other serious crimes. (PSR ¶¶ 1-13; J. of Conviction 1.) [Docket Entry No. 746; A363-364.]

It is respectfully submitted that the district court erred in not considering this new evidence in support of Mr. Giattino's compassionate release motion.

**2. The Burdi murder.**

As described by Gravano in his May 2023 Declaration, the murder of Phyllis Burdi had nothing to do with Mr. Giattino and was not committed by him:

> 6. In my involvement with the Gambino family, I became aware of the crimes, including murders, engaged in by other crimes families, including the Colombo family, the Bonanno family, the Genovese family, and the Lucchese family.
> 7. Although aware of Vincent Giattino, I have little recollection of him. He was not a "made man" in any crime family.
> 9. I am aware of the Phyllis Burdi murder. That murder was committed by Thomas Pitera. Pitera was a "made man" in the Bonanno family. He was a leader of a crew and organized and directed criminal activity and engaged in murders. Pitera personally disliked Burdi. In September 1987, Pitera wanted to kill Burdi after his wife died of a drug overdose while with her and she did not help her get medical attention. Pitera and Frank Gangi planned the murder. Pitera shot and killed Burdi. Based on my conversations with Gangi while we were incarcerated and other information I learned about the Burdi murder, to my knowledge, I have never heard Vincent Giattino's name mentioned in that murder either. [Docket Entry No. 744; A349-350].

16

According to the Government, Mr. Pitera had a personal vendetta against Burdi and decided to kill her after his wife died of a drug overdose while with her and failed to get medical attention. *See* PSR ¶ 19. As stated in Gravano's Declaration, Mr. Pitera and co-defendant and Bonanno associate Frank Gangi planned the murder. ¶ 9 [Docket Entry No. 744; A350]. On September 12, 1987, Mr. Pitera went to an apartment where Gangi and Burdi were present. Gangi had called Mr. Pitera. Upon arrival, Mr. Pitera went into a room where Burdi was present and shot and killed her. PSR ¶ 19. Mr. Pitera removed Burdi's body, dismembered and buried it (Mr. Giattino was not involved and was never accused of being involved; evidence suggested Gangi was also involved in Burdi's dismemberment). *Ibid.*

Following the Burdi murder, Gangi and Gravano had conversations about it while they were both incarcerated. Gravano Declaration ¶ 9. [Docket Entry No. 744; A350]. Based on these conversations and other information Gravano learned about the Burdi murder, Mr. Giattino was never mentioned as being involved; as Gravano attests: "Based on my conversations with Gangi while we were incarcerated and other information I learned about the Burdi murder, to my knowledge, I have never heard Vincent Giattino's name mentioned in that murder either." *Ibid.*

### 3. The Wilfred Johnson murder

Wilfred "Willie Boy" Johnson was murdered on August 29, 1988. According to the PSR, Mr. Giattino participated in but did not plan the murder. *See* PSR ¶ 20.

17

Based on interviews with Gravano new facts have now emerged undermining Mr. Giattino's involvement. Mr. Gravano attests:

> 8. I am aware of the murder of Wilfred "Willy Boy" (sic) Johnson. Johnson joined the Gambino family with Gotti in the 1960s. Later, Johnson cooperated with the Government and became a confidential informant. Gotti wanted him killed. In 1988, Gotti contracted for the killing of Johnson to Eddie Lino, a Gambino family "soldier," and Salvatore Scala, a/k/a "Fat Sally." "Fat Sally" was Lino's brother-in-law. Gotti had previously contracted murders to Lino and "Fat Sally." On August 29, 1988, Johnson was killed. I have never heard Vincent Giattino's name mentioned in this murder. Gravano Declaration ¶ 8. [Docket Entry No. 744; A350].

Mr. Giattino was never a "made man" (nor part of a crime family "administration")--never someone initiated into a crime family through sponsorship of another "made man." PSR ¶ 16. He also had a limited criminal history. According to the Government, he "took part" in the murders of Phyllis Burdi and Wilfred "Willie Boy" Johnson. PSR ¶ 18. He was not involved in the planning or actual commission of either murder. Had he, he would most certainly have been initiated and became a "made man" in the Bonanno family. Again, that never happened.

There are several significant facts that lessen Mr. Giattino's culpability in the murders: he was released on bail, immediately and on the Government's consent; he was offered a plea agreement of 10 years' imprisonment (3 to 4 years of actual time); he did not shoot and kill Burdi or Johnson; he did not participate in the planning and organizing of any murder; and was not a "made man" of any organized crime family.

18

## SUBPOINT C

**THE DISTRICT COURT ABUSED ITS DISCRETION IN NOT REDUCING MR. GIATTINO'S SENTENCE TO 35 YEARS AS *UNITED STATES V. RUSSO*, Nos. 92-CR-351, 90-CR-1063, 2022 WL 17247005 (E.D.N.Y. Nov. 28, 2022); AND OTHER CASES SUCH AS *UNITED STATES V. VINCENT ASARO*, No. 17-cr-127(ARR) (E.D.N.Y. April 17, 2020), *UNITED STATES V. ALAN GRECCO*, Crim. No. 89-00250 (D.N.J. Nov. 18, 2022), 2022 WL 17080748 (D.N.J. Nov. 18, 2022) AND ANTHONY SENTER'S RELEASE SUPPORT MR. GIATTINO'S RELEASE**

Following the district court's denial of compassionate release on July 26, 2022, Mr. Giattino's filed a "Renewed Motion for Reduction of Sentence" on November 25, 2022, citing the Honorable Frederic Block's reductions of life sentences for Anthony Russo and Paul Moore, who were both convicted of murders and other violent crimes after trial and sentenced to life imprisonment, were reduced to 35 years. [Docket Entry No. 735 at A286-294; *Russo/Moore* decisions at A296].

The district court rejected this argument based on its finding that Russo and the other cases cited are "not binding on the Court." [Docket Entry No. 746 at A363].

Mr. Giattino respectfully submits that the district court abused its discretion in denying the motion and by not reducing Mr. Giattino's life sentence to 35 years.

## 1. Anthony Russo's Reduction of His Life Sentence for Murders and other Violent Crimes to 35 Years' warrants such a reduction in Mr. Giattino's case

Mr. Russo, who was 70 years old and had served 29 years of his life sentence prior to Judge Block's decision to reduce his sentence, was convicted of racketeering

19

and two murders-in-aid of racketeering, with other crimes. The trial jury specifically determined that Mr. Russo, a captain in the Colombo Family, ordered that members of his crew and a member of separate crew, shoot and kill two men (John Minerva and Michael Imbergamo). *See Russo* Decision at 11; A306.

Judge Block found that Mr. Russo had engaged in extraordinary rehabilitation based on his lack of disciplinary history and programming. Judge Block also found that, despite being vaccinated against COVID-19, Mr. Russo's age, high cholesterol, high blood pressure and borderline diabetes, placed him at increased risk if he were to contract the virus. Judge Block also concluded that other factors, such as changes in sentencing law, and sentencing disparities among co-defendants, further supported the existence of "extraordinary and compelling" circumstances. (*see Russo* at 19; A314), and posed an insightful question, "If the Government in offering its plea deals did not believe that all those indicted on murder charges should be sentenced to life, why should the court?" *See Id.* Judge Block also noted that the sentences resulting from plea agreements that the Government made and entered into are consistent with the national average for murder convictions. *See Russo* decision at 20; A315. Finally, Judge Block found that the § 3553(a) factors were further satisfied by way of Mr. Russo's extraordinary rehabilitation and minimal risk of recidivism. In turn, Judge Block reduced Mr. Russo's life sentence to 35 years' imprisonment plus a lifetime of supervised release.

**2. Paul Moore's Case and Reduction of Life Sentence for Murder and Other Violent Crimes to 35 Years' Imprisonment**

Paul Moore, 56 years old at the time of Judge Block's decision, was an enforcer in a drug trafficking organization. In 1991, a jury convicted Mr. Moore of, *inter alia*, racketeering and participating in a drug conspiracy, and Mr. Moore was sentenced to life imprisonment. He served 32 years before Judge Block's decision to reduce his sentence to 35 years, finding that Mr. Moore had "also been the victim of sentencing disparities." [A319]. In his case, which charged 46 others, only he and one co-defendant were sentenced to life. All had been sentenced to 33 years or less. And, the undisputed leader, Mr. Vassell was only sentenced to 25 years, despite murdering two people and ordering the murders of several others.

> Judge Block concluded:
>
> I am letting two murderers sentenced to life out of prison. But I have painstakingly endeavored to explain why it is the appropriate thing to do under the First Step Act … Proponents of the Act have "lauded it as a success for the movement to end mass incarceration." But it is much more than that worthy goal. It injects into our legal system a compassionate dimension that indeed, as in these two cases, transcends the strictures of the law and represents the "humane thing to do in the interests of justice. [A323].

Similarly, this Court should reduce Mr. Giattino's sentence to 35 years' imprisonment based on the "extraordinary and compelling circumstances."

**3. In addition to the cases of Anthony Russo and Paul Moore, Other Similar Cases Warrant a Reduction in Mr. Giattino's Sentence**

21

On April 17, 2020, the United States District Court Judge Ross (Eastern District of New York), granted compassionate release to 85-year-old Vincent Asaro, a high-level member of the Bonanno crime Family serving a 96-month sentence for violation of the Travel Act. Asaro was 77 years old when he committed the crime and 82 years old at sentencing. Asaro had a stroke (a "cerebrovascular accident") in August 2019 requiring "extensive healthcare needs," "ongoing and chronic care" and "remain[ed] in bed the majority of the time." Despite finding that Asaro "overwhelmingly . . . ha[d] lived a life of violence" and that it was "difficult to determine exactly how independently he is able to speak, move, and care for himself" Judge Ross granted release. *See United States v. Vincent Asaro*, 17-cr-127(ARR), 2020 WL 1899221 (E.D.N.Y. April 17, 2020) [A385-395].

On November 18, 2022, the Honorable Susan D. Wigenton, U.S.D.J. (District of New Jersey) granted compassionate release to 78-year-old Alan Grecco, who had served 33 years of a 65 year sentence for RICO and gambling crimes related to his involvement with a faction of the Genovese Family of Law Cosa Nostra. Grecco suffered from serious chronic medical conditions including, but not limited to, stroke, chronic kidney disease, benign prostatic hyperplasia, hyperlipemia, nuclear sclerosis, degenerative disc disease, and hypertension. *United States v. Alan Grecco*, Crim. No. 89-00250. 2022 WL 17080748 (D.N.J. Nov. 18, 2022) [A374-383]. Mr. Grecco was released just 3 days after this decision on November 21, 2022. [A384].

22

Anthony Senter, serving life for his convictions for racketeering, kidnapping, loansharking, narcotics distribution, pornography, extortion, firearms conspiracy, and the operation of an international stolen car ring, based upon his participation in the so-called DeMeo Crew, a component of the Gambino organized crime family, has been released from prison and is now in a halfway house (with a BOP release date of June 22, 2024). [A384]. As stated in the Second Circuit affirmance: "From the early 1970's to the 1980's, these activities were furthered by calculated violence, including the brutal murders of various persons viewed by the Crew as a threat to their business." *United States v. DiNome*, 954 F.2d 839 (2d Cir. 1992). Had Mr. Giattino been convicted of crimes pre-Guidelines he, too, would be released.

### SUBPOINT D

**THE DISTRICT COURT ABUSED ITS DISCRETION IN NOT REDUCING MR. GIATTINO'S SENTENCE TO 35 YEARS AS HERE, THE "TOTALITY OF CIRCUMSTANCES" POINTS TO THE EXISTENCE OF "EXTRAORDINARY AND COMPELLING REASONS" FOR A REDUCTION OF SENTENCE**

Mr. Giattino submits that the district court erred in finding that he was "a devout member of Bonnano Crime Family" as the PSR clearly categorizes Mr. Giattino as "an associate of the Bonnano Crime Family" and never a "made" member. (PSR ¶16). As an associate, he was primarily involved in the distribution of cocaine and marijuana and was not, and never became a "made man." The

"extraordinary and compelling reasons" for a reduction of sentence are as follows:

    a) the 30 years of incarceration that he has served;

    b) the harsh duration of his sentence, considered against the Government's pretrial plea offer of 10 years and release on bail; sentences imposed on co-defendants in his case; sentences imposed for equally serious offenses, including murder; sentencing reductions for individuals who engaged in similar or more serious conduct; and Mr. Giattino's personal characteristics today;

    c) Mr. Giattino's remarkable record of rehabilitation and good conduct in prison given his life sentence, and extremely low risk of recidivism;

    d) Mr. Giattino's service and mentorship to others, specifically, younger inmates;

    e) Mr. Giattino's strong family relationships;

    f) Mr. Giattino's dedication and commitment to his daughter, Brigitte Giattino;

    g) The support network and reentry plan for Mr. Giattino;

    h) Mr. Giattino's age and serious medical conditions that make him vulnerable to more serious illness from COVID-19, and the deterioration of his health that will undoubtedly occur over the course of his life sentence given the aging process and long-term incarceration;

    i) The harsh and brutal conditions that he has suffered in prison during the pandemic.[10]

Despite serving life, Mr. Giattino has dedicated his time in prison to

---

[10] Like Mr. Giattino, Mr. Russo was incarcerated at FCI Allenwood.

productive and responsible living. He has a very limited disciplinary history. He is also a dedicated father to his now adult daughter, Brigitte, and role model to younger inmates and is described by fellow inmates as a "father to many," "a changed person," and a "mentor." Further, letters from his family demonstrate that he has strong support and a release plan, involving housing and modest employment.

### 1. Mr. Giattino's Close Relationship with his Daughter, Brigitte Giattino

Brigitte was barely walking when her father became incarcerated. Yet, they share a close bond. While she has never had a relationship with him outside of regular and continuous prison visits and phone calls, she states in her heartfelt letter dated October 28, 2020 [Docket Entry No. 721-3; A191-194], that he did a "phenomenal job" in raising her from behind prison walls. Whether in good, ordinary or tough times, Mr. Giattino has "been there" for Brigitte. He never "gave up" on her, even when she "pushed him away." "He continued to call when [she] refused to answer. He wrote to [her] letters and cards. He contacted other family members so that they could [her] messages of love and support." In describing her father's steadfast love and commitment to her, Brigitte further writes:

> Although my dad has been incarcerated for my entire life, he has also been there for me (on the phone) for every birthday, holiday, and major milestone thus far. Before the COVID restrictions, my dad has called me almost every single day for as long as I can remember. Every memory I have of major events in my life, I also have a memory of my Dad being there, on the phone. He's talked me through countless trouble with friends and supported me during

25

> heartbreaks and grief. My Dad was on the phone with my Mom while I received my first holy communion in the 2nd grade and when I received confirmation in the 7th grade. He "attended" my dance recitals, concerts when I played bass guitar in high school, and my soccer games growing up (which really means he was listening on the phone with my mom and waiting on the line when to check in with me). He "attended" my Kindergarten, 5th grade, 8th grade, High School, Undergraduate, and Graduate graduation ceremonies …
>
> My Dad has also always taught me that I need to choose my friends very wisely, a lesson I assumed he learned the hard way from his own choices in life. He has always guided me to follow the harder, longer path in life, as my Dad calls it. He has guided me through very difficult times in my life . . . I am lucky to have two parents who have wonderful senses of humor, and have so many memories of my Dad turning my tears into laughter over the phone. [Docket Entry No. 721-3; A192-193; Photos of young Brigitte and Mr. Giattino at A208-212].

As her "biggest supporter and champion," Mr. Giattino also encouraged and inspired Brigitte to pursue her education goals and seek become the "first Dr. Giattino in [their] family." She writes:

> Over the countless phone calls for the last 30 years, my Dad instilled in me that school was my way to success. My Dad encouraged me dive into the world of books as a healthy way of coping, as it is also his method of escaping from his world for a short period. I am the first member of my family to graduate high school. He encouraged me (and still does) to go as far in school and my career as I possibly can. I am a proud alumni of the City University of New York-Brooklyn College, where I've earned a Bachelors of Science with a major in Pre-Medicine and Psychology, a Masters of Science in Education, and a

26

>Post-Masters certification in School Psychology . . . I know that my studies and success make him very proud …
>
>The most important lesson that my father has taught and modeled for me is empathy. Now that I am working as a Psychologist for a public school district and find myself serving at-risk children and families, I talk a lot about my work life with my Dad during our phone calls … My father is extremely proud to have a raised a daughter that is not complacent to injustices, as he taught me to stand up for what is right. He taught me to question everything and everyone, and always reminded me that I could always rely on my family. He instilled in me to use my voice for myself and for others, and that if I didn't feel heard I had to keep trying until I found someone who'd listen. I grew into the resilient, assertive woman I am today because of this guidance from both my mother and father, along with their push for my education to go as far as I was willing to take it. [A192-193].

Brigitte is keenly aware of her father's mortality, especially because of his age, serious health issues and the COVID-19 pandemic. She struggles with the impact of losing her father and experiencing the "first and only time … with him outside of prison … at his funeral." She desires nothing more than to have "time with [her father] in real life, no matter how little that may be." She writes:

>Knowing that my Dad may pass away in prison is not something I have fully processed. I'm not sure if anyone possibly could. Sometimes, I catch myself fantasizing about playing at a playground with my Dad and my future children. I do not want to bring my children into a prison facility for visits with my Dad, for I fear that what happened with my mental health may happen to theirs. It pains me beyond words to know that the first and only time I may have with him outside of prison may be at his funeral. I want nothing more in life than to go out to dinner

with my Dad, as cooking and eating are one of our many shared interests. Now that COVID-19 is in my Dad's prison facility and many people have been infected, I am terrified that he may contract the virus and the serious and potentially fatal consequences he may suffer because of his age and declining health. My Dad is being locked in isolation for weeks at a time, and he has to choose between making a phone call to me, taking a shower, or going outside for some fresh air. He always chooses to call me because he'd rather have peace of mind from hearing my voice and knowing that I am doing okay. Given his age and current health conditions, I am begging you from the bottom of my heart, to please give us your compassion. I know, as his daughter and as a mental health professional, that my father is not a danger to society. He has a loving family that will take care of him and live out his senior years alongside him. I wish that I had the power to have time with him in real life, no matter how little time that may be. I hope that you can find it in your heart and use your power as a judge to help mend our family back together for his remaining years. [A193-194].

Brigitte, now a school psychologist, seeks to help children who are struggling. Describing her father in her heartfelt letter as her "biggest supporter and champion," she fears his death and deeply desires to have "time with him in real life."

## 2. Mr. Giattino's Rehabilitation While Incarcerated Over the Last 31 Years

As the Supreme Court has recognized, "evidence of postsentencing rehabilitation may be highly relevant to several of the §3553(a) factors that Congress has expressly instructed district courts to consider at sentencing." *Pepper v. United States*, 562 U.S. 476, 491 (2011); *see also United States v. Austin*, 06 Cr. 991 (JSR), 2020 WL 3447521, at *3 (S.D.N.Y. June 22, 2020) (recognizing rehabilitation is "an

28

important factor" in compassionate release); *United States v. Torres*, 87 Cr. 593 (SHS), 2020 WL 2815003, at *7 (S.D.N.Y. June 1, 2020).

Mr. Giattino has been rehabilitated and is a changed man. Despite serving a life sentence, he has used his time in prison to try and better himself, and also his prison community. He has participated in programs and classes. Letters from prison staff and inmates, who have spent considerable time with Mr. Giattino, reveal a man who has transformed. He is "respectful" and a "gentleman," someone with "the ability to become a productive member of society." Counselor Joshua Newcomer recommends that Mr. Giattino be released (he is the closest staff member to Mr. Giattino and has had regular contact with him over the last 7 years). He writes:

> Inmate GIATTINO, VINCENT has been incarcerated at FCI Allenwood since July, 2013. I have known inmate GIATTINO, VINCENT since he arrived here. I have known GIATTINO, VINCENT to be consistent in his behavior and has maintained a good standing with staff and inmates. I have known inmates to approach GIATTINO, VINCENT for positive guidance and advice. To add, I know GIATTINO, VINCENT has been battling some health issues and I have discussed this with GIATTINO, VINCENT; therefore, it would be beneficial for GIATTINO, VINCENT to have the chance to be released to better battle his health issues with the support of his family. [Docket Entry No. 711; A129].

Recreation Specialist, B. Oberdorf, who has known Mr. Giattino for the last 10 years, also recommends that Mr. Giattino be released:

> I have known inmate Giattino since 2010 when I worked at USP Allenwood as a correctional officer. Inmate

29

Giattino has since worked his way to the FCI Allenwood. Inmate Giattino has always been a character but has changed [h]is attitude and outlook a complete one hundred and eighty degrees while at the FCI … Given the Covid-19 outbreak and his "High Risk" health I personally feel that he would benefit more being released [where] he can continue to work on his health instead of being quarantined. Inmate Giattino has always been respectful to both staff and inmates and communicates exceptionally well with both. I think given his age and "High Risk" health he should be highly considered for a release due to Covid-19. [Docket Entry No. 721-2; A186].

Other positive letters from Allenwood are from FCI Allenwood Dr. Thomas E. Cullen [Docket Entry No. 721-2 at A187]; Jennifer Maris, HIT [Docket Entry No. 721-2 at A188]; and Tina Cioffi, RN [Docket Entry No. 721-2 at A189].

Mr. Giattino's fellow inmates have also written in support of his release and describe him as someone who is trusted and relied upon for advice and guidance. He has sought to improve the lives of those who are incarcerated and who will be released--a man with a "heart of gold," a "true friend," a better man because of his mistakes, remorseful and a "father to many." They write:

- "[Vincent Giattino] was one of the first guys to introduce himself, as well as extend his hand, when I came to FCI Allenwood. From that day forth Mr. Giattino has been someone that I felt comfortable enough to go to for advice about issues in the institution, as well as personal issues. And he's always given me sound and mature advice, filled with wisdom. Mr. Giattino is a humble man, with a heart of gold, that is like a father to many." Letter from Donnie Stuckey dated October, 2020 [Docket Entry No. 721-1; A171].

30

- "Vincent is more than just my cell-mate, he is my best friend.  I have lived in close quarters with him for the better of 6 years, and in that time he has shown nothing but honest and caring tendencies … He is constantly telling individuals that are just coming into the system as well as about to be released to stay off drugs and stay out of trouble, because the end result is always prison or death and pain and grief for ones family.  Vincent is not the same person that was sentenced 30 years ago.  When the cell doors lock at night and we talk, I know he is a changed person." Letter from Mark Basnight dated October 19, 2020 [Docket Entry No. 721-1; A172].

- "I have personally been able to benefit from Vincent's willingness to help those around him.  He has helped me set my sights on doing something constructive and good with my time." Letter from Shawn Maciel dated October 20, 2020 [Docket Entry No. 721-1; A173].

- "To say that [Vincent] is a good guy is an understatement.  He is always giving advice to the younger guys and helping them to avoid some of the same mistakes he has made.  He is always telling them guys how important it is to change their mentality so they can stay out of prison." Letter from Alphonso Drapeau dated October 20, 2020 [Docket Entry No. 721-1; A174].

- "[Vincent] goes out of his way to try and help out some of the younger guys from making mistakes here in the prison with his experience and advice." Letter from Harry Schiech dated October 20, 2020 [Docket Entry No. 721-1; A175].

- "I am writing in regards to Mr. Vincent Giattino. I have known Vincent for 3 years now and I can honestly say he never ceases to amaze me.  I can't remember a time being in his company and not having a smile on my face.  He is unselfish and doesn't mind helping guys in need.  I enjoy playing pinochle against him, he's a fierce competitor.  He

31

loves talking football and horse racing. Vincent is a good guy and a good friend." Letter from Sidney Upchurch dated October 20, 2020 [Docket Entry No. 721-1; A176].

- "After serving multiple decades of critical disfavor in a regressive prison system, he has more than earned the chance to show civilization his rehabilitative state. He has earned multiple certificates and scholar credits. He has helped many inmates including myself do the same in preparation for society. He has also been a companion for inmates who's considered suicide. He helped them to see the positivity in life … He will be a great mentor to the younger generation of former dissidents who have heard his story and see the living example of change and outstanding citizen he has become … It is my greatest concern, he won't get the chance to teach his grandkids not to make the mistakes he has also, how he's a better man because of his mistakes." Letter from Marquis Riley dated October, 2020 [Docket Entry No. 721-1; A177].

- "Since I got into this institution [Vincent] has been like a mentor to me. He has helped me with understanding how things work around here and has looked out for me since I arrived … when I needed a cell to movie into he moved me in with him. [It] helped me with looking into taking college classes and earning credit while doing my time here … I believe he is remorseful of his past and he would be very grateful of the opportunity to be with his family during these times of disease and with his ailing health putting him at high risk." Letter from Colin Hurle dated October, 2020 [Docket Entry No. 721-1; A178-179].

- "I come to Allenwood . . . where I met Mr. Giattino. After a few months, Mr. Giattino and myself were acquainted and began to talk . . . he has shown me that most of my belie[f] system and values needed to be changed. I know now that my whole way of thinking about life was not good and have made the steps necessary to have a successful life after my release. Mr. Giattino has been incarcerated for decades and his health is not very good. I

32

see that he struggles to breath[e] after short distances of walk. I often have to help him with ice, garbage, and other daily chores, as do others. Vincent Giattino, despite his poor health always has a smile on his face & never complains. He thrives on painting and I pray the covid doesn't find him . . . I'm no doctor but I'm sure it will kill him. I pray Judge that you let him go die with his remaining family." Letter of Joshua Souza dated October 20, 2020 [Docket Entry No. 721-1; A180].

- "Mr. Giattino should be given the opportunity to be reunited back in society with his family and friends. If I could convey to this honorable court one of many examples of Mr. Giattino's fine character, it would have to be when Mr. Giattino help[ed] another older inmate (who for the record had no more than a 5th grade education) his name was Charlie Richie, this man was so bitter with the world and the way life had cheated him, some where he had given up hope in society and felt like nobody cared. Somehow Mr. Giattino saw past all that tough guy attitude and began to sit down with him, and in no time he began to help Mr. Richie to achieve a life long goal, and that was to receive his degree in building management. In my conclusion, I could show so many fine example[s] of Mr. Giattino, but I would really like to ask this court to give Mr. Giattino one chance in society." Letter of Charles Hood (undated). [Docket Entry No. 721-1; A181].

- "Always there to give productive word of encouragement to people he see going astray, so I know that he will be an asset to the world should he be released." Letter from Derrick Grant dated October 21, 2020 [Docket Entry No. 721-1; A182].

- "I have learned [from Vinny] that being positive through a horrible situation is truly a state of mind and if Vinny didn't tell you, you would never guess he has been going through this for 30 years. Even after all that time, Vinny has an infectious personality and loves to laugh. Loves it …he never focuses on what is going wrong. He focuses

33

on trying to enjoy his life the best way he can … while talking with him he has opened up a bit about his personal life … while talking about his daughter I see a man who is deeply sorry for lost time and opportunity … anyone who has made mistakes understands the loss of sleep and unrest. The nights imagining different scenarios of how, if given a chance, they would live their life in a completely different way … I know that people change … there is a difference between bad people and good people who have done bad things. In my eyes he is the latter." Letter from Timothy Graul (undated) [Docket Entry No. 721-1; A183-184].

### 3. Vincent Giattino's Good Character, Remorse and Constant and Unwavering Support from his Family

Several family members and a mother of an inmate submitted letters in support of Mr. Giattino's release. While sharing their real concerns of him suffering serious consequences if he contracts COVID-19, they also expressed Mr. Giattino's good character and that he is remorseful for his past choices.

Marie Scheuerman, who faithfully visited her brother over the years, writes:

"… Over the many years we have kept in touch, he has repeatedly shown remorse for the misguided decisions he made as a younger man.
Vincent has been in prison for a very long time and has most certainly learned from the mistakes of his past. He is now a mature, older man in poor health who wants to go home, be with his family and leave this prison existence behind him." [Docket Entry No. 711; A131].

Likewise, Christopher Scheuerman, who has also regularly visited his uncle while he has been incarcerated, writes:

"[Vincent Giattino] has served nearly 30 years and is

34

remorseful for the impact his choices have had on his
family and others. He acknowledges that his poor
decisions have placed him in this current position."
[Docket Entry No. 711; A132].

Each of Mr. Giattino's family members are willing and able to support him.

If released, he will be able to live safely with his sister and family in her New Jersey

home. As stated by his cousin Joseph J. Giattino, Jr. in a letter dated August 2, 2020:

"I grew up around Vincent, he was always a man with a
heart of gold who taught me many valuable life lessons
that I still use to this day. He helped instill my Catholic
faith in to me and told me to always look to God when in
doubt . . . He was a hero to our family, he took care of our
family like no other. I could mention a million different
things this man has done for me and all our family, but to
summarize.
Never once has he let a family member down, and in return
I would be honored to do the same for him.
I may be older now and have a family of my own, but my
wife . . . is also on board to give him a place to live with
us. We can help support him financially, as well as
mentally to adapt him to todays society . . .
We have the resources to take care of him and help him
get back to being a productive member of society with our
Family, Church, and my own personal knowledge it would
be done with no problem at all." [Docket Entry No. 711;
A134].

As stated by his niece Jacqueline Scheuerman in a letter dated August 11,

2020:

"Since the spread of the pandemic, my family and I have
been very concerned for his health as the risk for my Uncle
is high due to him falling into multiple high-risk groups
according to the CDC. Because of how vulnerable he is
and the risk of a potential COVID-19 outbreak throughout

35

the prison I am writing for you to please consider compassionate release.

I am concerned for my Uncle's life and while I realize he made the decisions he did to cause his sentence I believe he is no longer a threat to society and is a man that is remorseful for the decisions he made. I along with my family will commit to supporting not only my Uncle's health and well-being but also his success in finishing his sentence in home confinement." [Docket Entry No. 711; A133].

As stated by his cousin, Frances Giattino:

"… [w]e can financially support him, teach him, and get him back on his feet upon his release … our family is very large. Each and every person in it is another branch of support for him, we are all very close and all on the same boat when it comes to Vincent. We miss him, and want to see him again. So does his daughter, who he has never really met outside of visits and phone calls. [Docket Entry No. 711; A135].

As stated by his cousin Vincent Raucci in an undated letter:

". . . We grew up together and still talk frequently even though he is in prison. Should my cousin be released we are offering to take him in, support him financially and help him financially and help him find training and teaching to fit into modern society. He will have a roof over his head, and access to a very large family who loves and supports him. He would be in very good hands and watched over by many of us to help him in any way possible.
                    *          *          *
I hope you take into consideration the large support bracket we have in place if he is released, he would be in great care with our family and become a productive member of society again." [Docket Entry No 722; A214].

36

As stated by his cousin John Raucci in a letter dated August 25, 2020:

> "I'm writing this letter for consideration for a compassionate release due to [COVID 19] & his current health conditions.  Vincent is my older cousin . . . a big part of my life when I was young.  I didn't have my father around & he stepped in for many of my childhood milestones.  From when I graduated kindergarten, my communion, confirmation, 6th grade graduation, High School graduation & all birthdays in between.  He was always there for my brother & me in one way or another.  School clothes, supplies, advi[c]e & most of all kept us out of trouble.
>
>       *       *       *
>
> If he were to get consideration for release, he would be able to live with me & my family at our house.  My brother & I both own a small business.  Vincent would have a job with either one of us."  [Docket Entry No. 714; A400].

In John Raucci's January 26, 2022 letter, he reiterates his support for Mr. Giattino, concluding: "Besides his daughter, Vincent has a younger sister, brother-in-law, nieces, nephews and cousins.  All want nothing more than for him to come home and spend time with his family.  He would have a large support system in place with all of us." [Docket Entry No. 726-4; A246].

As stated by Jeanne Basnight, the mother of an inmate incarcerated with Mr. Giattino, in a letter dated August 24, 2020:

> "[Mr. Giattino] is not the same person who was sent to prison three decades ago.  He was sentenced to life not death and when this Covid-19 becomes more prevalent in the prison he is in it would likely be a death sentence for him.
>
>       *       *       *
>
> He tells guys that are just coming into prison and those

37

going home to get an education and stay away from drugs because the consequences of crime are not worth it. Drugs make people shun the people that really love them and entertain the people that don't have their best interest in life.

*     *     *

I do not think there is any risk to the general public by giving Vincent Giattino compassionate release. This will also save the government money by not housing him for the rest of his life." [Docket Entry No. 726; 244].

The district court found a reduction in Mr. Giattino's sentence not warranted based on the "nature and circumstances of the offense." It is respectfully submitted that this was an abuse of discretion and that reducing Mr. Giattino's sentence to 35 years is consistent with the goals and objectives of § 3553(a).[11]

Further, courts have recognized that the pandemic has made "incarceration harsher and more punitive than would otherwise have been the case." *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020); *see also United States v.*

---

[11] See *United States v. Shane Stephen Anello*, 2020 WL 3971399, at *3 (W.D. Wash. July 14, 2020) (granting compassionate release); *United States v. Anderson*, 2020 WL 2849483 at *2 (S.D.N.Y. June 2, 2020) (Furman, J.) (granting compassionate release despite a lack of positive tests at the prison, and noting the prison's lack of testing); *United States v. Michael F. Alexander*, 2020 WL 6268136 (N.D. Ohio Oct. 26, 2020) (Polster, J.) (granting the "compassionate release" motion for Mr. Alexander at FCI Allenwood Low). Mr. Giattino is regularly placed in danger by the conditions at FCI Allenwood Medium – he cannot socially distance as he is constantly in close proximity to other inmates, he is required to share phones and computers with hundreds of inmates, he cannot regularly sanitize and staff often do not wear masks or gloves. Moreover, the measures to protect inmates, specifically near 24-hour lockdowns, are inherently punitive and brutal, having a serious impact on mental and emotional health.

38

*Rengifo*, No. 9 Cr. 109, 2021 WL 5027334, at * 14 (S.D.N.Y. Oct. 29, 2021) (finding the "unanticipated severity" of lockdown conditions "constitutes another circumstance that" with other factors collectively amounts to extraordinary and compelling reason for early release); *United States v. Serrano*, 2022 WL 1443688, at * 14 (S.D.N.Y. 2022) ("pandemic-induced conditions of confinement may constitute 'extraordinary and compelling' circumstances warranting compassionate release on their own, particularly for defendants who have (i) *served long sentences* and (ii) been detained for the entirety of the pandemic") (emphasis added). Mr. Giattino has suffered extended lockdowns, limited phone calls with family, and no social visits. As detailed above, he also suffers from serious medical conditions. These factors also weigh in favor of finding extraordinary and compelling reasons.

Finally, the 31 year sentence that Mr. Giattino has served also weighs in favor of a sentence reduction. *See United States v. Vargas*, 502 F.Supp.3d 820, 826-7 (S.D.N.Y. 2020) (collecting cases). These years and massive consequences he has suffered, are just punishment for the extremely serious offenses for which he was convicted. *See, e.g., Graham v. Florida*, 560 U.S. 48, 93 (2010) (Roberts, J., concurring) (noting that a life without parole sentence was "far more severe than the average sentence impose on those convicted of murder or manslaughter, who typically receive under 25 years in prison"); *United States v. Qadar*, 00 Cr. 603, 2021 WL 3087956, at *12 (E.D.N.Y. July 22, 2021) (noting that the average federal

39

murder sentence in fiscal year 2020 was approximately 21 years); U.S. Sentencing Comm., *Interactive Data Analyzer,* https://ida.ussc.gov/analytics/saw.dll?Dashboard (showing the median sentence length for murder for fiscal years 2015 through 2021 was 240 months, the median length of imprisonment was 240 months, the average sentence length was 262 months and the average length of imprisonment was 263 months).

Mr. Giattino's "trial penalty," and rehabilitation in the face of a life sentence, strong family relationships, harsh prison conditions, lengthy imprisonment, age and serious medical conditions, together, present an extraordinary and compelling reason to reduce. Many, if not all, of these factors were considered by Judge Block relating to Mr. Russo and Mr. Moore. Accepting these factors, Judge Block concluded that extraordinary and compelling reasons existed. Similarly, in its prior decisions, the district court acknowledged Mr. Giattino's tremendous rehabilitation and transformation over the last 30 years while serving a life sentence, the gravity of the COVID-19 pandemic and conditions of confinement along with his serious medical conditions, his mentorship to other inmates, good conduct in prison, ability to maintain strong and close relationships with his family, particularly his daughter, Brigitte, his support network and reentry plan, and remorse for his prior wrongdoing.

Mr. Giattino is, quite simply, a changed man. Over the last 31 years, he has been thoroughly rehabilitated and "has repeatedly shown remorse for the misguided

decisions he made as a younger man" and "learned from the mistakes of his past."[12] Further, despite a life sentence, he has sought to improve the lives of his fellow inmates, becoming a "father to many."[13] His longtime prison Counselor, Joshua Newcomer, and other staff, recommend that he be released.[14] Fortunate to have a close and supportive family, a release plan is in place whereby he can live safely.

Further, courts have recognized that the pandemic has made "incarceration harsher and more punitive than would otherwise have been the case." *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020); *see also United States v. Rengifo*, No. 9 Cr. 109, 2021 WL 5027334, at * 14 (S.D.N.Y. Oct. 29, 2021); *United States v. Serrano*, 2022 WL 1443688, at * 14 (S.D.N.Y. 2022). Mr. Giattino has suffered extended lockdowns, limited phone calls with family, and no social visits.

The district court abused its discretion in not granting compassionate release or reducing the sentence to 35 years.

---

[12] Letter from Marie Scheuerman (sister of Vincent Giattino) dated August 2, 2020, Dkt. No. 711 annexed at A130-131.

[13] *See* FCI Allenwood Inmate Letters - Letter from Donnie Stuckey, October, 2020 [Docket Entry No. 721 at A170-171].

[14] Letter from J. Newcomer, Counselor FCI Allenwood, dated August 19, 2020, Dkt. No. 711, *see* (FCI Allenwood Staff Letters) at A128-129.

41

## SUBPOINT E

### A REDUCTION IN MR. GIATTINO'S SENTENCE TO 35 YEARS' IMPRISONMENT IS CONSISTENT WITH THE PURPOSES AND OBJECTIVES OF 18 U.S.C. § 3553(a)

There is no question that Mr. Giattino was convicted of very serious crimes: participating in a racketeering conspiracy, which included two homicides, and other related offenses. However, as argued in *Subpoint B*, *supra*, Mr. Giattino never planned, organized or actually committed either murder nor had any position or rank in any crime family. This is in stark contrast to Mr. Russo who, as a captain of the Colombo Family, supervised a crew of "made members" and associates. Mr. Russo's crew engaged in criminal activities that generated money that was distributed within the Colombo Family's hierarchy. Mr. Russo participated in the planning, organizing and ordering of the murders of Mr. Imbergamo and Mr. Minerva.

In addition, as a captain in the Colombo crime family, Mr. Russo participated in other attempts, conspiracies and efforts to murder and assassinate approximately 25 others, including 12 murders. Describing the degree of violence committed by Mr. Russo, his crew and the Colombo Family, the Honorable Jack B. Weinstein noted in an amended sentencing memorandum and order for Mr. Russo's co-defendant Victor Orena: "Were it not for the fact that the New York police and Federal Bureau of Investigation had bugged their cars and hideouts and frustrated

42

many of their ambushes, the death toll would have multiplied." *United States v. Sessa*, 821 F. Supp. 870, 872 (E.D.N.Y. 1993), *aff'd sub nom. United States v. Amato*, 15 F.3d 230 (2d Cir. 1994), and *aff'd sub nom. United States v. Orena*, 32 F.3d 704 (2d Cir. 1994), and *aff'd*, 41 F.3d 1501 (2d Cir. 1994). As such, Mr. Russo engaged in extremely serious and violent ongoing conduct over a far greater period time than Mr. Giattino in Russo's role as a captain within a reputed criminal organization. Despite the "nature and circumstances of his offense(s)," his life sentence was reduced to 35 years.

It is disingenuous for the Government to continue to demand that Mr. Giattino never be released and die in prison because of the severity of his crimes. More than thirty years ago, the Government agreed to bail, and offered 10 years in prison, believing that he participated in homicides and other criminal activity. It begs the question posed by Judge Block, "If the Government in offering its plea deals did not believe that all those indicted on murder charges should be sentenced to life, why should the court?" The plea offer made to Mr. Giattino undeniably reflects that the Government never believed that Mr. Giattino's present life sentence was appropriate and only came about after he exercised his constitutional right to a trial.

For the foregoing reasons, the district court abused its discretion in not granting compassionate release or reducing Mr. Giattino's sentence to 35 years.

## SUBPOINT F

## OTHER COURTS HAVE REDUCED LIFE SENTENCES OF THOSE CONVICTED OF VIOLENT CRIMES AND MURDERS AS PART OF ORGANIZED CRIME AND WITH "FAR GREATER CULPABILITY" THAN MR. GIATTINO

In addition to Judge Block, courts in various districts have granted motions for reductions in life sentences where the "nature and circumstances of the offense" were particularly brutal and serious. While these decisions are based on individual considerations, in nearly all of these cases defendants were released after being convicted after trial of multiple and or particularly violent murders and sentenced to life imprisonment and had been incarcerated for multiple decades. *See, e.g., United States v. Tellier*, 92 Cr. 869 (S.D.N.Y. May 10, 2022) (granting compassionate release for 61-year-old defendant who was the leader of a criminal organization and convicted of murder, attempted murder and robbery who had been incarcerated for 29 years); *United States v. Underwood*, No. 88 Cr. 822, 2021 WL 3204834, at *1 (S.D.N.Y. Jan. 15, 2021) (granting compassionate release motion where at least five brutal murders were committed at defendant's direction); *United States v. Ramirez*, No. 98 Cr. 927, 2021 WL 5233512, at *1, *10 (S.D.N.Y. Nov. 10, 2021) (reducing forty-eight-year sentence by eight years where defendant was leader of drug trafficking organization personally involved in two murders); *United States v. Rodriguez*, 00 Cr. 761 (JSR) (S.D.N.Y. September 30, 2020) (granting a reduction

44

in sentence where defendant engaged in racketeering activities, drug trafficking and brutally tortured and murdered a confidential informant); *United States v. Rios*, 94 Cr. 112 (JBA) (D. Conn., December 8, 2020) (granting compassionate release where defendant, with a felony history, was convicted of murder, drug-trafficking and racketeering and found to have acted "with the heart of a calculated killer"); *United States v. Perez*, 02 Cr. 7 (JBA)(D. Conn., March 4, 2021) (granting compassionate release after defendant engaged in a murder for hire, directing two men to kill a rival to protect his large-scale drug operation); *United States v. Cox*, 89 Cr. 196 (GAF) (W.D.M.O. June 17, 2021) (granting compassionate release where defendant was the leader of the "Black Mafia," a drug-trafficking organization which was responsible for at least 17 murders and several bank robberies); *United States v. Fisher*, 493 F. Supp. 3d 231 (S.D.N.Y. 2020) (reducing life sentence to time served after 38 years in prison for a defendant who was a major narcotics trafficker and "personally committed" four murders); *United States v. Tidwell*, 476 F. Supp. 3d 66 (E.D. Pa. 2020) (reducing life sentence to time-served after 26 years in prison for a defendant convicted of engaging in a continuing criminal enterprise and two counts of murder in furtherance of that enterprise as well as terms of years for multiple drug possession, tax evasion and firearms counts). While these cases are not binding, they are certainly persuasive. Further, they demonstrate the willingness of courts to reduce sentences where an individual has, after serving decades in prison, found

45

redemption and transformation. As the court stated in *Underwood*, a defendant's "history and characteristics did not freeze on the day of his arrest and incapacitation," and "'evidence of post sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors.'" *Underwood*, 2021 WL 3204834, at *6 (quoting *Pepper v. United States,* 562 U.S. 476, 491 (2011)).

On July 23, 2020, the Honorable Lewis J. Liman granted the "compassionate release" of Rita Gluzman, who had premeditated the murder of her estranged husband, killing him with a co-defendant with axes and dismembering his body with a hacksaw. She later attempted to flee the country and was convicted after trial and sentenced to life imprisonment. Ms. Gluzman, who had served 24 years in prison, was released because her medical conditions and risk of severe illness or death related to COVID-19, and her rehabilitation efforts. *See United States v. Gluzman*, 96 Cr. 323 (LJL) (S.D.N.Y. July 23, 2020).

On September 30, 2020, the Honorable Jed S. Rakoff reduced Diego Rodriguez's life sentence related to his convictions after a capital trial, which included the murder of a government informant, to 30 years, based on his rehabilitation and risk of severe illness or death related to COVID-19. Mr. Rodriguez convicted in September 2004, following a seven-week jury trial, on substantive and conspiratorial counts of RICO (18 U.S.C. § 1962(c),(d)), substantive and conspiratorial counts of drug trafficking (21 U.S.C. §§ 841(a)(1), (b)(1)(A),

46

846), and the murder of a confidential informant in connection with drug trafficking (21 U.S.C. § 848(e)(1)(A)). In the 1990s, Rodriguez, along with his co-defendant at trial, Alan Quinones, ran a racketeering enterprise. Quinones was the head. Rodriguez was the chief lieutenant of the enterprise, which sold wholesale quantities of narcotics. On June 27, 1999, Mr. Rodriguez kidnapped Eddie Santiago, a government informant, and brought him to a residence. Inside the residence, Mr. Rodriguez and at least one other individual, beat, handcuffed and hogtied Mr. Santiago. Mr. Rodriguez and Quinones held Mr. Santiago for hours and taunted and spat in his face. They then killed Mr. Santiago, removed his body from the residence, and burned it. The next day, Santiago's charred dead body was found in a vacant lot in the Bronx. *See United States v. Quinones,* 511 F.3d 289, 292 (2d Cir. 2007). Mr. Rodriguez had served 20 years. *See United States v. Rodriguez*, 00 Cr. 761 (JSR) (S.D.N.Y. September 30, 2020).

Further, in *United States v. Panton*, 89 Cr. 346 (LAP) (S.D.N.Y. August 4, 2020), Mr. Panton was granted "compassionate release." Mr. Panton, who had been incarcerated for nearly 30 years, was granted release based on his medical conditions and the pandemic, along with his rehabilitation efforts and family support. He had been convicted after trial of participating in a large-scale heroin distribution conspiracy, which involved firearms, and sentenced to life imprisonment. On April 6, 2020, the Honorable Loretta A. Preska granted the "compassionate release" of

47

Eric Millan after he had served more than 28 years. Mr. Millan, who was the leader of a major heroin distribution organization known as Blue Thunder, which distributed more than $100 million worth of heroin in Manhattan and the Bronx from 1986 until 1991, was released based on his "extraordinary rehabilitation." *See United States v. Millan*, 91 Cr. 685 (LAP) (S.D.N.Y. April 6, 2020). On April 22, 2020, the court reduced six life sentences imposed after trial of Carlos Curtis, a convicted child sex trafficker and career offender, who also had a prior sex offense involving minors, to time served in light of serious risks to his health because of COVID-19. He had served 17 years. *See United States v. Curtis*, 03 Cr. 533 (BAH) (D.D.C. Apr. 22, 2020). Finally, on October 22, 2020, Robert Willis was released after serving 24 years of a life sentence. In 1995, Mr. Willis was convicted after trial of conspiring to commit bank larceny, and participated in non-fatal shootings. He had a history of violence and committed robberies and drug offenses. However, the court determined that since he had served 25 years, was 68 years old, had engaged in rehabilitation efforts and was at high-risk because of the pandemic, reducing his sentence to time served was appropriate. *See United States v. Robert Willis*, 2020 WL 6196165 (D. Kan. Oct. 22, 2020) (Robinson, CJ). Noah Robinson, the half-brother of Reverend Jesse Jackson, was recently released. Mr. Robinson, 80, was convicted after trial of hiring hitmen from the El Rukn gang to murder three individuals was sentenced to life imprisonment. United States District Judge

48

Rebecca Pallmeyer noted the length of time that Mr. Robinson had been incarcerated – 33 years and his declining health and age. *See United States v. Robinson*, 2022 US Dist. LEXIS 162940 (ND Ill. Sep. 9, 2022, No. 89 CR 908-31)).

Here, Mr. Giattino's present characteristics and post-sentencing history, and support from other cases involving similar and more serious violent offenses, facts and circumstances, call for a reduction in his sentence. Additionally, keeping Mr. Giattino incarcerated would be inconsistent with the growing number of reduced sentences for those convicted of violent crimes, including murders, namely the recently reduced sentences of Mr. Russo and Mr. Moore. And now with Judge Block's decision, without reducing Mr. Giattino's sentence to 35 years, another significant sentencing disparity will exist. It would simply be unfair and not "promote respect for the law" for a captain in a criminal organization who engaged in ongoing and lasting serious and violent criminal activity, who ordered two murders and participated in significant efforts to kill several others, to receive a reduction in his sentence and Mr. Giattino to not. Mr. Giattino has already served a sentence of more time than Mr. Russo. He has also served a sentence on par with the average time for murder or manslaughter. Further, a reduction would not create a disparity among his co-defendants as all but one of Mr. Giattino's co-defendants, Mr. Pitera, have been released (or passed away). As such, continuing Mr. Giattino's sentence would precipitate a circumstance of unwarranted sentencing disparity

among his co-defendants, specifically Richard David[15] and William Bright[16] and similarly situated defendants, such as Mr. Russo, convicted and sentenced to life for their participation in violent crimes and now released.

Mr. Giattino's age, serious medical conditions, productive and responsible conduct while incarcerated over the last three decades, and strong family support all strongly suggest that he is extremely unlikely to recidivate. *See* U.S. Sentencing Comm., The Effects of Aging on Recidivism Among Federal Offenders, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivsm-Age.pdf; *see also United States v. Piggott*, No. 94 Cr. 417, 2022 WL 118632, at *3 (S.D.N.Y. Jan. 12, 2020) ("It is also well-established that recidivism decreases significantly with age"); *United States v. Scott*, F. Supp. 3d 629, 635 (E.D.N.Y. 2017) ("[Defendant's] strong family support and good job prospects make recidivism unlikely."). Mr. Giattino, unlike Mr. Russo, does not have and never has had a ranked position in any criminal organization.

The district court erred in denying compassionate release or a reduction of sentence to 35 years.

---

[15] Co-defendant Richard David, a former New York court officer, pleaded guilty to racketeering, admitting to his participation in the murder and dismemberment of a police informant. In 1993, he was sentenced to 20 years' incarceration. David was released early and placed on parole.

[16] Co-defendant William Bright pleaded guilty to his participation in a murder. He was sentenced to 204 months' incarceration.

### SUBPOINT G

### SENTENCING DISPARITIES COMPEL A REDUCTION OF SENTENCE

The district court abused its discretion by finding that the section 35653(a) factors did not favor release. [Docket Entry No. 748; A364]. Mr. Giattino has already served a sentence more time than Mr. Russo. He has also served a sentence on par with the average time for murder or manslaughter. Further, a reduction would not create a disparity among his co-defendants as all but one of Mr. Giattino's co-defendants, Mr. Pitera, a captain, who is in a category all to his own having actually committed 6 murders, have been released (or passed away). As such, continuing Mr. Giattino's sentence would precipitate a circumstance of unwarranted sentencing disparity among his co-defendants, specifically Richard David[17] and William Bright[18] and similarly situated defendants, such as Mr. Russo, that were convicted and sentenced to life for their participation in violent crimes, including the planning and ordering of murders,

---

[17] Co-defendant Richard David, a former New York court officer, pleaded guilty in 1991 to racketeering, admitting to his participation in the murder and dismemberment of a police informant, Talal Siksik, among the predicate acts. In 1993, he was sentenced to 20 years' incarceration. Sentenced on January 7, 2002, when parole still existed in the federal system, David was released early and placed on parole supervision.

[18] Co-defendant William Bright pleaded guilty to his participation in a murder. He was sentenced to 204 months' incarceration.

51

and are now released.

In conclusion, Mr. Giattino's Release and Placement on Home Confinement is Consistent with the Purposes and Objectives of § 3553(a) in Light of the COVID-19 Pandemic and Health Crisis. In the age of COVID-19, "sufficient but not greater than necessary" takes on new meaning. That is, "[t]o avoid a sentence that *was* sufficient but not greater than necessary from becoming one immeasurably greater than necessary," the compassionate release of vulnerable inmates like Vincent Giattino who have a release plan and are not a danger is appropriate. *See United States v. Mel*, 2020 WL 2041674 at *3 (D. Md. Apr. 28, 2020) (finding release appropriate where "the actual severity of the sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing.").

<u>CONCLUSION</u>

Based on the foregoing arguments and authorities cited, Mr. Giattino respectfully submits that the district court's decision should be reversed as the Court abused its discretion in denying relief. Mr. Giattino should either be released to home confinement or be granted a sentence reduction to 35 years.

*/s/ John Vincent Saykanic*
John Vincent Saykanic, Esq.
624 Grove Street
Clifton, New Jersey 07013
TEL: 472-5863
FAX: (973) 614-0386
E-MAIL: JohnVincentEsq@aol.com

Dated: January 9, 2024        Attorney for Appellant Vincent Giattino

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation because this brief contains 13,983 words, excluding the parts of the brief exempted by *Fed. R. App. P.* 32(f).

2. This brief complies with the typeface requirements of *Fed. R. App. P.* 32(a)(5) and the type style requirements of *Fed. R. App. P.* 32(a)(6) because this brief has been prepared in a proportional spaced typeface using Microsoft WordPerfect in 14-point Times New Roman.

*/s/ John Vincent Saykanic*
JOHN VINCENT SAYKANIC, ESQ.
NJ BAR ID NO.: 045801984
624 Grove Street
Clifton, New Jersey 07013
TEL: (973) 472-5863
FAX: (973) 614-0386
E-MAIL: JohnVincentEsq@aol.com
*Counsel for Appellant Vincent Giattino*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on January 9, 2024, I electronically filed the foregoing with the Clerk of the Court using the ACMS/CM/ECF, which will send notice of such filing to all registered CM/ECF users.

*/s/ John Vincent Saykanic*
JOHN VINCENT SAYKANIC, ESQ.
NJ BAR ID NO.: 045801984
624 Grove Street
Clifton, New Jersey 07013
TEL: (973) 472-5863
FAX: (973) 614-0386
E-MAIL: JohnVincentEsq@aol.com

53

# SPECIAL APPENDIX

## <u>TABLE OF CONTENTS TO THE SPECIAL APPENDIX</u>

<u>Page No.</u>

Memorandum & Order of Judge Brodie filed November 19, 2020
  [Docket Entry No. 723][19] …………………………………………………... SPA1-6

Memorandum & Order of Judge Brodie filed July 26, 2022 [Docket
  Entry No. 734] ………………………………………………………….. SPA7-19

Memorandum & Order of Judge Brodie filed July 31, 2023 [Docket
  Entry No. 746] ………………………………………………………SPA20-31

---

[19] As the three "Memorandum & Orders" denying compassionate release/reduction in sentence are related, all three are included in the Special Appendix.

55

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

UNITED STATES OF AMERICA,

                             **MEMORANDUM & ORDER**
               v.                    90-CR-424 (MKB)

VINCENT GIATTINO,

                  Defendant.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On November 5, 1992, a jury convicted Defendant Vincent Giattino on eight counts, which included racketeering, conspiring to commit two murders subject to the Racketeer Influenced and Corrupt Organizations ("RICO") Act, committing two RICO murders, conspiring to distribute cocaine, distributing cocaine, and using a firearm with a silencer, (J. of Conviction 1, Docket Entry No. 270), and on February 26, 1993, the Court[1] sentenced Defendant to five concurrent life sentences, two ten-year terms of imprisonment to run concurrent with the life sentences, and one thirty-year term to run consecutive to the other counts to be followed by twenty-three years of supervised release, and ordered Defendant to pay a $200,000 fine, (*id.* at 2–3, 5; Feb. 26, 1993 Sentencing Hr'g Tr ("Sentencing Tr.") 73:15–74:7, 74:21–23 Docket Entry Nos. 295, 710).

On September 2, 2020, Defendant filed a motion for compassionate release seeking a modification of his sentence, immediate release to home confinement, and supervised release

---

[1] Judge Reena Raggi presided over Defendant's sentencing hearing. (*See* Feb. 26, 1993 Sentencing Hr'g Tr ("Sentencing Tr."), Docket Entry Nos. 295, 710.)

pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[2]  In support, Defendant argues that his "serious

medical conditions" and resulting heightened vulnerability to COVID-19, his rehabilitation, and

his relationship with his family warrant the modification of his sentence and his release to home

confinement.  (Def.'s Reply 4, 9–10, 14, 16.)   The government opposes the motion on

substantive grounds, arguing that the Court should deny the motion because "[D]efendant's

medical conditions are appropriately managed" at the medium-security facility housing in the

Federal Correctional Institution in Allenwood, Pennsylvania ("FCI Allenwood Medium") and

because the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of Defendant's continued

incarceration.  (Gov't Opp'n to Def.'s Mot. ("Gov't Opp'n") 8–9, Docket Entry No. 719.)

For the reasons discussed below, the Court denies Defendant's motion for compassionate

release.

## I.   Background

### a.   Investigation, conviction, and sentencing

On July 29, 1991, agents of the Federal Bureau of Investigation arrested Defendant in

Miami, Florida, who was found in possession of false identification documents with the name

John Robert Ianniello.  (Presentence Investigation Report ("PSR") ¶ 22, Docket Entry No. 716.)

Between 1986 and 1987, Defendant "negotiated to sell half a kilogram net weight of marijuana"

and "distributed an approximate combined total amount of 181 grams net weight of cocaine."

(*Id.* ¶ 17.)  "In addition to trafficking in narcotics," in September of 1987 and August of 1988

respectively, Defendant "took part in the murders of Phyllis Burdi and Wilfred 'Willie Boy'

Johnson" under the direction of a higher-ranking authority in the Bonnano Crime Family

---

[2] (Def.'s Mot. for Compassionate Release ("Def.'s Mot."), Docket Entry No. 711; Def.'s
Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 721; Def.'s Letter in Supp. of
Def.'s Mot. ("Def.'s Letter"), Docket Entry No. 722.)

("BCF"), a major organized criminal association. (*Id.* ¶¶ 16, 18.)

On November 5, 1992, a jury convicted Defendant on eight counts, which included racketeering, conspiring to commit two RICO murders, committing two RICO murders, conspiring to distribute cocaine, distributing cocaine, and using a firearm with a silencer. (*Id.* at 4–5; J. of Conviction 1.)

At a sentencing hearing held on February 26, 1993, the Court noted that Defendant was involved in "truly heinous crimes" and that the murders of Burdi and Johnson "were committed in horrific manners," and sentenced Defendant to five concurrent life sentences, two ten-year terms of imprisonment to run concurrent with the life sentences, and one thirty-year term to run consecutive to the other counts to be followed by twenty-three years of supervised release, and ordered Defendant to pay a $200,000 fine. (Sentencing Tr. 73:3–74:7, 74:21–23; J. of Conviction 2–3, 5.)

### b.   Compassionate release application

On June 22, 2020, Defendant filed a request for compassionate release with the warden at FCI Allenwood Medium, (Def.'s Mot. 2), and on July 2, 2020, the warden denied his request, (*id.*; Letter from Warden dated July 2, 2020, annexed to Def.'s Mot. as Ex. A).[3]

Defendant, who is sixty-seven years old, argues that he is "a high and at-risk inmate [due] to the COVID-19 virus as he currently takes medications and suffers from" asthma, high blood pressure, diabetes, heart and circulatory conditions, severe obesity, high cholesterol, and sleep complications. (Def.'s Mot. 3.)  Defendant asserts that his approximately twenty-eight years of sentence served and his "period of supervised release that will follow[] appropriately reflect[s]

---

[3] The parties agree that Defendant has exhausted his administrative remedies. (*See* Gov't Opp'n 3; Def.'s Mot. 4.)

the seriousness of the offense, promotes respect for the law[,] and provides just punishment for the offense." (*Id.* at 14.) In further support of his motion, Defendant reiterates his arguments as to why his medical history and the COVID-19 risks presented by the conditions at FCI Allenwood Medium, where he is being held, represent extraordinary and compelling circumstances warranting relief. (*Id.* at 10; Def.'s Reply 5–7.) Defendant asserts that the totality of circumstances, including his strong familial relationship, (Def.'s Reply 9–14), and "genuine signs of rehabilitation," warrant a sentencing reduction under 18 U.S.C. § 3582, (Def.'s Mot. 13–14).

## II. Discussion

The Court finds the reduction of Defendant's sentence to be inconsistent with the section 3553(a) factors.

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). Section 3582(c)(1)(A)(i) "empowers a court to reduce a defendant's term of imprisonment if it finds that 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 423 (S.D.N.Y. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

Under section 3582(c), and as relevant here, courts may modify a previously imposed sentence where:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

4

## SPA4

     (i)    extraordinary and compelling reasons warrant such a reduction; or

     (ii)   the defendant is at least [seventy] years of age, has served at least [thirty] years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

            and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i)–(ii).

Although the Court takes seriously the threat posed by the pandemic to incarcerated individuals and the heightened risk of complications faced by individuals, such as Defendant, with "obesity, hypertension, asthma and diabetes," (Def.'s Reply 4), the Court finds that the requested relief is inconsistent with the section 3553(a) factors.

While the Court applauds Defendant's "'life history and characteristics,' and his rehabilitation and transformation over the last [thirty] years," (*id.* at 15), Defendant committed two heinous murders and trafficked narcotics as a devout member of BCF, (*see* PSR 16–18). Due to the gravity of his crimes, the Court sentenced Defendant to the "maximum sentence that can be imposed" on some of his convicted counts, (Sentencing Tr. 73:12–13), and did not downwardly depart from the United States Sentencing Guidelines, (*id.* at 72:10–19), which plainly "reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A). The nature and seriousness of Defendant's crimes mandate his continued detention.

### III.  Conclusion

Accordingly, for the reasons explained above, the Court denies Defendant's motion for compassionate release.

Dated: November 19, 2020
       Brooklyn, New York

                              SO ORDERED:


                              _____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge

SPA6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

UNITED STATES OF AMERICA,

                                                    **MEMORANDUM & ORDER**
                    v.                              90-CR-424 (MKB)

VINCENT GIATTINO,

                    Defendant.

----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On November 5, 1992, a jury convicted Defendant Vincent Giattino on eight counts, which included racketeering, conspiring to commit two murders subject to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C § 1961 *et seq.*, committing two RICO murders, conspiring to distribute cocaine, distributing cocaine, and using a firearm with a silencer, (J. of Conviction 1, Docket Entry No. 270; Presentence Investigation Report ("PSR") ¶ 1, Docket Entry No. 716), and on February 26, 1993, Judge Reena Raggi sentenced Giattino to five concurrent life sentences, two ten-year terms of imprisonment to run concurrent with the life sentences, and one thirty-year term to run consecutive to the other counts to be followed by twenty-three years of supervised release, and ordered Giattino to pay a $200,000 fine, (J. of Conviction 2–3, 5; Sentencing Hr'g Tr. dated Feb. 26, 1993 ("Sentencing Tr.") 73:15–74:7, 74:21–23, Docket Entry Nos. 295, 710).

On September 2, 2020, Giattino filed a motion for compassionate release seeking a modification of his sentence, immediate release to home confinement, and supervised release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (First Mot. for Compassionate Release, Docket Entry No. 711.) By Order dated November 19, 2020, the Court denied Giattino's motion. (Mem. and

Order dated Nov. 19, 2020 (the "November 2020 Order"), Docket Entry No. 723.)  On February

14, 2022, Giattino renewed his motion, seeking immediate release or reduction of his sentence.[1]

In support, Giattino argues that his "declining health" and resulting heightened vulnerability to

COVID-19, his rehabilitation during incarceration, and his strong relationship with his family

warrant modification of his sentence and his release.  (Def.'s Mot. 1–3.)  Giattino also argues

that compared to "similarly situated defendants," including his co-defendants, he received a

much higher sentence and faced a "trial penalty" compared to the ten-year sentence that he

would have received through the Government's plea offer prior to his trial.  (*Id.* at 7.)  The

government opposes the motion on substantive grounds, arguing that the Court should deny the

motion because Giattino fails to demonstrate "an extraordinary and compelling reason for

release," (Gov't's Opp'n to Def.'s Mot. ("Gov't's Opp'n") 3–7, Docket Entry No. 730), and

because the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of Giattino's continued

incarceration, (*id.* at 7–10).

 For the reasons discussed below, the Court denies Giattino's motion for compassionate

release.

I. **Background**

 a. **Investigation, conviction, and sentencing**

 On July 29, 1991, agents of the Federal Bureau of Investigation arrested Giattino, who

was found in possession of false identification documents with the name John Robert Ianniello,

in Miami, Florida.  (PSR ¶ 22.)  Between 1986 and 1987, Giattino "negotiated to sell half a

kilogram net weight of marijuana" and "distributed an approximate combined total amount of

---

 [1] (Def.'s Mot. for Compassionate Release ("Def.'s Mot."), Docket Entry No. 726; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 733.)

181 grams net weight of cocaine." (*Id.* ¶ 17.) "In addition to trafficking in narcotics," in September of 1987 and August of 1988 respectively, Giattino "took part in the murders of Phyllis Burdi and Wilfred 'Willie Boy' Johnson" under the direction of a higher-ranking authority in the Bonnano Crime Family (the "BCF"), a major organized criminal association. (*Id.* ¶¶ 16, 18–20.)

On November 5, 1992, a jury convicted Giattino on eight counts: racketeering, conspiring to commit two RICO murders, committing two RICO murders, conspiring to distribute cocaine, distributing cocaine, and using a firearm with a silencer. (*Id.* ¶¶ 1–13; J. of Conviction 1.)

At a sentencing hearing held on February 26, 1993, Judge Raggi noted that Giattino was involved in "truly heinous crimes" and that the murders of Burdi and Johnson "were committed in horrific manners," and sentenced Giattino to five concurrent life sentences, two ten-year terms of imprisonment to run concurrent with the life sentences, and one thirty-year term to run consecutive to the other counts to be followed by twenty-three years of supervised release, and ordered Giattino to pay a $200,000 fine. (Sentencing Tr. 73:3–74:7, 74:21–23; J. of Conviction 2–3, 5.)

### b. Compassionate release application

On February 14, 2022, Giattino renewed his application for compassionate release. (Def.'s Mot.)

In support of his motion, Giattino, who is "approaching [seventy] years of age," argues that (1) he is a high-risk inmate in light of the COVID-19 virus because he suffers from "obesity, hypertension, asthma[,] . . . diabetes, and utiliz[es] a [continuous positive airway pressure ("CPAP")] machine," (Def.'s Mot. 1, 5); (2) his punishment "was drastically different from . . . what the Government offered his co-defendants charged with murder" and he was a victim of the

"trial penalty" because his sentence after his jury trial was far higher than his plea offer, (*id.* at 4,

7); (3) continued incarceration at the Federal Correctional Institution in Allenwood,

Pennsylvania ("FCI Allenwood Medium"), where he is being held, "will likely result in a

debilitating and unnecessarily cruel decline in his physical and emotional health," (*id.* at 5); and

(4) he has strong family relationships, (*id.* at 8–9), has been rehabilitated during his time in

prison and has mentored others, (*id.* at 9–12), and has a "loving and close relationship with his

daughter," (*id.* at 12–14), all further evidence of the "totality of circumstances" that would

warrant a sentencing reduction under 18 U.S.C. § 3582.

## II.   Discussion

"[O]ther than the limited exceptions provided by statutes . . . courts are not free to modify

sentences at will." *United States v. Martin*, 974 F.3d 124, 135 (2d Cir. 2020); *see United States

v. Friedlander*, No. 20-CR-441, 2022 WL 280800, at *1 (E.D.N.Y. Jan. 31, 2022) ("A court may

not modify a term of imprisonment once it has been imposed except pursuant to statute."

(quoting *United States v. Rabuffo*, No. 16-CR-148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14,

2020))).  Under 18 U.S.C. § 3582(c), and as relevant here, a court may modify a previously

imposed sentence where:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that —
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or

4

# SPA10

> (ii)   the defendant is at least [seventy] years of age, has
> served at least [thirty] years in prison, pursuant to a
> sentence imposed under section 3559(c), for the offense
> or offenses for which the defendant is currently
> imprisoned, and a determination has been made by the
> Director of the Bureau of Prisons that the defendant is
> not a danger to the safety of any other person or the
> community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable
> policy statements issued by the Sentencing
> Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i)–(ii).

"Section 3582(c)(1)(A) authorizes a court to reduce a previously imposed term of

imprisonment upon finding that 'extraordinary and compelling reasons warrant such a

reduction.'" *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam) (quoting 18

U.S.C. § 3582(c)(1)(A)(i)); *United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) (per curiam)

(same); *see also, e.g.*, *United States v. Cummings*, No. 20-CR-3156, 2021 WL 4142844, at *1

(2d Cir. Sept. 13, 2021) (same); *United States v. DiBiase*, 857 F. App'x 688, 688–89 (2d Cir.

2021) (same); *United States v. Fernandez*, 853 F. App'x 730, 731–32 (2d Cir. 2021) (same);

*United States v. Roney*, 833 F. App'x 850, 852 (2d Cir. 2020) (same). "A court deciding a

compassionate release motion can consider 'the full slate of extraordinary and compelling

reasons that an imprisoned person might bring before [it].'" *Keitt*, 21 F.4th at 71 (alteration in

original) (quoting *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020)); *Jones*, 17 F.4th at

374 n.3 ("[D]istrict courts are not confined to those reasons set forth by the [Bureau of Prisons]

Director in evaluating compassionate release motions brought by defendants and instead are free

'to consider the full slate of extraordinary and compelling reasons that an imprisoned person

might bring before them.'" (quoting *Brooker*, 976 F.3d at 235–37)); *United States v. Souza*, No.

20-3829, 2021 WL 3871262, at *1 (2d Cir. Aug. 31, 2021) ("[T]he Sentencing Commission's

5

SPA11

policy statements do not 'constrain district courts' discretion to consider whether any reasons are extraordinary and compelling.'" (quoting *Brooker*, 976 F.3d at 236)).

However, "there are three requirements that must be satisfied before a court can grant such relief" — namely, (1) "absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities"; (2) "a court must 'consider[] the factors set forth in [section] 3553(a) to the extent that they are applicable'"; and (3) "the inmate must demonstrate that his proffered circumstances are indeed 'extraordinary and compelling' such that, in light of these [section] 3553(a) factors, a sentence reduction is justified under [section] 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed."[2] *Keitt*, 21 F.4th at 71 (alterations in original) (quoting 18 U.S.C. § 3582(c)(1)(A)); *see United States v. Davis*, No. 21-716, 2022 WL 1320316, at *2 (2d Cir. May 3, 2022) (citing *Keitt*, 21 F.4th at 71)). "[W]hen a district court denies a defendant's motion under [section] 3582(c)(1)(A) in sole reliance on the applicable [section] 3553(a) sentencing factors, it need not determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction." *Keitt*, 21 F.4th at 73; *see Jones*, 17 F.4th at 374 (noting that because "extraordinary and compelling reasons are necessary — but not sufficient — for a defendant to obtain relief . . . , panels of this [c]ourt have, in non-precedential summary orders, assumed the[ir] existence . . . but held that a district court's 'reasonable evaluation of the [applicable] [s]ection 3553(a) factors' is 'an alternative and independent basis for denial of compassionate release'" (quoting *United States v. Robinson*, 848 F. App'x 477, 478 (2d Cir. 2021))); *see also, e.g.*, *United States v. Cherry*, No. 21-913, 2022 WL

---

[2] The Government does not argue that Giattino did not exhaust his administrative remedies. (*See generally* Def.'s Mot; Gov't's Opp'n.)

1210663, at *2 (2d Cir. Apr. 25, 2022) ("[S]ection 3582(c) permits a district court to reduce a

sentence only if, '*after* considering the factors set forth in section 3553(a),' it 'finds that

extraordinary and compelling reasons warrant such a reduction.' Thus, . . . a finding that the

section 3553(a) factors disfavor early release is independently sufficient to deny a

compassionate-release motion. . . .'" (first quoting 18 U.S.C. § 3582(c)(1)(A); and then citing

*Keitt*, 21 F.4th at 73)); *Souza*, 2021 WL 3871262, at *2 (affirming ruling that "even if [a

defendant]'s medical conditions demonstrated extraordinary and compelling reasons for release,

'the factors set forth in [section 3553(a)] militate toward continued confinement'" (quoting

*United States v. Bolino*, No. 06-CR-806, 2020 WL 4749807, at *2 (E.D.N.Y. Aug. 17, 2020)));

*Roney*, 833 F. App'x at 853 ("We need not decide whether [the appellant] has proffered an

extraordinary and compelling reason that warrants his release . . . because, even assuming

*arguendo* that he has, we discern no abuse of discretion in the district court's conclusion that

release is nevertheless unwarranted upon consideration of the [section] 3553(a) factors."). Thus,

"a finding that the section 3553(a) factors disfavor early release is independently sufficient to

deny a compassionate-release motion, regardless of the presence of any 'extraordinary and

compelling reasons.'" *Cherry*, 2022 WL 1210663, at *2 (quoting *Keitt*, 21 F.4th at 73); *see*

*United States v. Mattes*, No. 20-CR-2349, 2022 WL 260395, at *2 (2d Cir. Jan. 28, 2022) ("[A]

district court's reasonable evaluation of the [s]ection 3553(a) factors is an alternative and

independent basis for denial of compassionate release." (quoting *Jones*, 17 F.4th at 374)).

Giattino argues that his "release following nearly [thirty] years of incarceration satisfies

the . . . factors set forth in [section] 3553(a)," (Def.'s Reply 3), due to the length of his sentence

in view of the ten years he would have served through a plea bargain, the sentences served by his

co-defendants, and the "trial penalty" he allegedly faced; his age and serious medical conditions;

the productive and responsible conduct that he has had while incarcerated; and his strong family support, (Def.'s Mot. 5–15).

The Government argues that the section 3553(a) factors militate against early release. (Gov't's Opp'n 7–10.)

The requested relief is inconsistent with the section 3553(a) factors. *See Roney*, 833 F. App'x at 853 (affirming denial of compassionate release where the district court had weighed the defendant's "serious medical conditions," the "seriousness of his offense conduct," and "the need for his original sentence to remain in place to promote respect for the law and to provide just punishment," among other section 3553(a) factors). While Giattino argues that he received a longer sentence than his co-defendants, (Def.'s Reply 5), the Court does not find this to be a basis for reducing Giattino's sentence. *See United States v. Roman*, No. 21-CR-185, 2022 WL 363909, at *1 (2d Cir. Feb. 8, 2022) (affirming denial of compassionate release motion and stating that there is "no requirement that a district court consider or explain sentencing disparities among co[-]defendants" (quoting *United States v. Alcius*, 952 F.3d 83, 89 (2d Cir. 2020) (per curiam))); *United States v. Bryant*, 976 F.3d 165, 180 (2d Cir. 2020) ("[T]here is no requirement to consider a disparity with a co-defendant's sentence." (citing *Alcius*, 952 F.3d at 89)); *United States v. Clinton*, 820 F. App'x 34, 37 (2d Cir. 2020) ("We also disagree with [the defendant's] contention that the [d]istrict [c]ourt [erred by] fail[ing] to consider sentencing disparities between [the defendant] and his co-defendants. We have repeatedly held that a district court is not required to consider such disparities."); *Alcius*, 952 F.3d at 89 ("[T]here is no requirement that a district court consider or explain sentencing disparities among co[-]defendants."); *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008) (holding that district courts are not required "to consider disparities between co-defendants"). Further, to the extent that Defendant relies on

SPA14

other district court decisions granting compassionate release to defendants whom he believes to be similarly situated, these cases are non-binding, and Giattino has not shown that his sentence creates unwarranted sentencing disparities in light of the intensely fact-specific rulings in those cases. (Def.'s Mot 15–18; Gov't's Opp'n 9); *see United States v. Brown*, No. 21-122, 2021 WL 5872940, at *2 (2d Cir. Dec. 13, 2021) ("To the extent that [the defendant] relies on district court decisions granting compassionate release to defendants he deems to be similarly situated . . . those cases are non-binding.").

The Court is also unpersuaded by Giattino's additional argument that he suffered a "trial penalty" for not accepting his plea bargain, (Def.'s Mot. 7); *see United States v. Bennett*, 252 F.3d 559, 562 n.5 (2d Cir. 2001) ("[T]he lower sentence after a guilty plea reflects a 'reduction from a sentencing norm ascertained independent of the procedure by which guilt is ascertained. A sentence imposed upon a defendant who stands trial is that norm; it is not an enhancement above the norm as a cost of standing trial.'" (quoting *United States v. Cruz*, 977 F.2d 732, 734 (2d Cir. 1992))); *United States v. Cruz*, 156 F.3d 366, 374 (2d Cir. 1998) (collecting cases supporting the practice of the Government offering a plea with a lower sentence); *United States v. Lorenzano*, No. 03-CR-1256, 2021 WL 734984, at *4 (S.D.N.Y. Feb. 24, 2021) (denying motion for compassionate release where the defendant asserted that "he was unfairly punished for exercising his right to a jury trial and refusing to plead guilty along with his co-defendants").

Further, although the Court takes seriously the threat posed by the pandemic to incarcerated individuals and the heightened risk of complications faced by individuals, such as Giattino, with "serious medical conditions that make [them] vulnerable to more serious illness from COVID-19," (Def.'s Reply 2), Giattino's medical conditions do not warrant reducing his sentence. *See United States v. DiMartino*, No. 21-CR-81, 2022 WL 761511, at *1 (2d Cir. Mar.

14, 2022) (affirming denial of compassionate release where defendant suffered from "asthma,

hypertension, obesity, sleep apnea, heart disease, and high cholesterol" and alleged that this put

him "at a higher risk of complications from COVID-19"). In addition, Giattino is vaccinated

against COVID-19, (Def.'s Mot. 5), and the Court is not aware of any COVID-19 cases among

inmates and staff at FCI Allenwood Medium, (Gov't's Opp'n 3; Federal Bureau of Prisons,

*Covid-19 Cases*, (last visited July 26, 2022), https://www.bop.gov/coronavirus); *see United

States v. Hunter*, No. 21-1773, 2022 WL 2288688, at *2 (2d Cir. June 24, 2022) (affirming

denial of compassionate release where defendant had "underlying medical conditions" but was

"protected against the COVID-19 pandemic with two doses of the . . . vaccine" and noting that

"the vaccine remains a highly effective means of preventing the most severe effects of COVID-

19" (collecting cases)); *United States v. Patel*, No. 21-1746, 2022 WL 1634454, at *2 (2d Cir.

May 24, 2022) ("[B]ecause [the defendant] has now been vaccinated, any risk of severe illness

from COVID-19 has been substantially decreased." (citations omitted)); *United States v. Jeffries*,

No. 14-CR-6001, 2022 WL 2036331, at *1 (W.D.N.Y. June 7, 2022) ("Furthermore, . . . [the

defendant] has been twice vaccinated for the virus and that fact alone warrants dismissal of this

motion."); *United States v. Reiter*, No. 87-CR-132, 2021 WL 1424332, at *7–8 (S.D.N.Y. Apr.

15, 2021) (noting that obesity put defendant at increased risk of severe illness from COVID-19

but that the risk was reduced because the defendant was vaccinated and the spread of the virus at

his facility was controlled).

  In addition, the Court acknowledges and applauds Giattino's "rehabilitation in the face of

a life sentence" and his mentorship to other inmates, (Def.'s Reply 2–3), his good conduct in

prison, (*id.*), his ability to maintain strong and close relationships with his family, particularly his

daughter, (*id.*), and his support network and reentry plan, (*id.*). Nevertheless, the section 3553(a)

factors do not warrant a modification of Giattino's sentence in light of the seriousness of his offenses. Giattino committed two heinous murders using guns equipped with silencers and trafficked narcotics as a devout member of BCF. (*See* PSR ¶¶ 16–22; Gov't's Opp'n 2.) During sentencing, Judge Raggi acknowledged the "evidence about truly heinous crimes" and "murders that were committed in horrific manners." (Sentencing Tr. 73:3–6.) The life sentence that Judge Raggi imposed when considering "the horrible crimes committed," (*id.* at 73:8–14), plainly "reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A); *see United States v. Robinson*, No. 21-CR-1865, 2022 WL 2204126, at *3 (2d Cir. June 21, 2022) (holding that the district court did not abuse its discretion in finding that the defendant's "rehabilitation . . . was insufficient to justify relief"); *United States v. Vaughn*, No. 21-CR-1984, 2022 WL 2203857, at *1 (2d Cir. June 21, 2022) (affirming denial of compassionate release where district court "considered [the defendant's] medical condition exposing him to risk from COVID-19, his good behavior while incarcerated, and the support he will receive from his spouse upon release" but "nonetheless reasonably concluded that reducing [the defendant's] sentence by more than six years was unwarranted"); *United States v. Garcia*, No. 21-CR-1181, 2022 WL 2154675, at *2 (2d Cir. June 15, 2022) (affirming denial of compassionate release where district court acknowledged the defendant's commitment to rehabilitation but concluded that his criminal history and seriousness of his crime counseled against release); *United States v. Reyes*, No. 20-3285, 2022 WL 1669388, at *1 (2d Cir. May 26, 2022) (affirming denial of compassionate release where the "court acknowledged [the defendant's] efforts toward rehabilitation, [but] nevertheless found that the section 3553(a) factors weighed heavily against a sentence reduction" in light of the defendant's conduct); *United States v. Williams*, No. 22-4156, 2022 WL 1554649, at *2 (2d Cir. May 17,

11

SPA17

2022) (affirming denial of compassionate release where "[t]he district court held that [the defendant] was not entitled to a sentence reduction under the [section] 3553(a) factors because of the seriousness of his offenses and because the danger to the community outweighed any rehabilitative attempts, given the severity of his offenses which included murder, distributing drugs, and participating in a gang"); *United States v. Stinson*, No. 20-CR-3744, 2021 WL 5499478, at *1 (2d Cir. Nov. 24, 2021) (affirming denial of compassionate release where the district court noted the defendant's rehabilitation and "positive contributions" to try to mentor other individuals and specifically young people to "get their lives on track once they get out"); *Cummings*, 2021 WL 4142844, at *2 ("While we commend [the defendant] for his efforts at self-improvement while incarcerated, we conclude that the [d]istrict [c]ourt did not abuse its discretion when it considered these points and still found that the [s]ection 3553(a) factors weighed against release.").

While the Court appreciates Giattino's efforts at building relationships with prison staff and counselors, mentoring and supporting other inmates, maintaining cohesive family relationships, and demonstrating remorse for his past actions, the nature and seriousness of Giattino's crimes support his continued detention under the 3553(a) factors.

### III.  Conclusion

Accordingly, for the reasons explained above, the Court denies Giattino's motion for compassionate release.

Dated: July 26, 2022
Brooklyn, New York

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

13

SPA19

Clerk's Office
Filed Date: 7/31 23

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW
YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

UNITED STATES OF AMERICA,

**MEMORANDUM & ORDER**
90-CR-424 (MKB)

v.

VINCENT GIATTINO,

Defendant.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On November 5, 1992, a jury convicted Defendant Vincent Giattino on eight counts: racketeering, conspiring to commit two murders subject to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C § 1961 *et seq.*, committing two RICO murders, conspiring to distribute cocaine, distributing cocaine, and using a firearm with a silencer, (J. of Conviction 1, Docket Entry No. 270; Presentence Investigation Report ("PSR") 4–5, Docket Entry No. 716). On February 26, 1993, Judge Reena Raggi sentenced Giattino to five concurrent life sentences, two ten-year terms of imprisonment to run concurrent with the life sentences, and one thirty-year term to run consecutive to the other counts to be followed by five years of supervised release, and ordered Giattino to pay a $200,000 fine, (J. of Conviction 2–3, 5; Sent'g Hr'g Tr. dated Feb. 26, 1993 ("Sent'g Tr.") 73:15–74:7, 74:21–23, Docket Entry Nos. 295, 710).

On November 25, 2022, Giattino filed a third motion for compassionate release, seeking a reduction of his life sentence to thirty-five years.[1] In support, Giattino argues that in a recent decision by Judge Frederic Block of the Eastern District of New York, the life sentences for two

------

[1] (Def.'s Mot. for Compassionate Release ("Def.'s Mot."), Docket Entry No. 735; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 744.)

SPA20

other defendants were reduced to thirty-five years, and that his should be similarly reduced. (Def.'s Mot. 1–5.) Giattino also argues that the totality of his circumstances point to the existence of extraordinary and compelling reasons for a reduction in his sentence and that a reduction in his sentence would be consistent with the purposes and objectives of 18 U.S.C. § 3553(a). (*Id.* at 5–9.)

For the reasons discussed below, the Court denies Giattino's renewed motion for compassionate release.

## I.   Background

### a.   Investigation, conviction, and sentencing

Between 1986 and 1987, Giattino "negotiated to sell half a kilogram net weight of marijuana" and "distributed an approximate combined total amount of 181 grams net weight of cocaine." (PSR ¶ 17.) "In addition to trafficking in narcotics," in September of 1987 and August of 1988 respectively, Giattino "took part in the murders of Phyllis Burdi and Wilfred 'Willie Boy' Johnson" under the direction of a higher-ranking authority in the Bonnano Crime Family (the "BCF"), a major organized criminal association. (*Id.* ¶¶ 16, 18–20.) On July 29, 1991, agents of the Federal Bureau of Investigation arrested Giattino in Miami, Florida, and found him in possession of false identification documents with the name John Robert Ianniello. (*Id.* ¶ 22.)

On November 5, 1992, a jury convicted Giattino on eight counts: racketeering, conspiring to commit two RICO murders, committing two RICO murders, conspiring to distribute cocaine, distributing cocaine, and using a firearm with a silencer. (*Id.* ¶¶ 1–13; J. of Conviction 1.)

At a sentencing hearing held on February 26, 1993, Judge Raggi noted that Giattino was involved in "truly heinous crimes" and that the murders of Burdi and Johnson "were committed in horrific manners," and sentenced Giattino to five concurrent life sentences, two ten-year terms

of imprisonment to run concurrent with the life sentences, and one thirty-year term to run consecutive to the other counts to be followed by five years of supervised release, and ordered Giattino to pay a $200,000 fine.  (Sent'g Tr. 73:3–74:7, 74:21–23; J. of Conviction 2–3, 5.)

**b.  Prior compassionate release applications**

On September 2, 2020, Giattino filed a motion for compassionate release seeking a modification of his sentence, immediate release to home confinement, and supervised release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (First Mot. for Compassionate Release, Docket Entry No. 711.)  By Order dated November 19, 2020, the Court denied Giattino's motion (the "November 2020 Decision").  (Nov. 2022 Decision, Docket Entry No. 723.)  On February 14, 2022, Giattino filed a second motion, seeking immediate release or reduction of his sentence. (Second Mot. for Compassionate Release, Docket Entry No. 726.)  By Order dated July 26, 2022, the Court denied Giattino's motion ("July 2022 Decision").  (July 2022 Decision, Docket Entry No. 734.)

**c.  Current compassionate release application**

On November 25, 2022, Giattino filed a third application for compassionate release, four months after the Court denied his second application.  (Def.'s Mot.)

In support of his motion, Giattino argues that (1) Judge Block's decision in *United States v. Russo*, Nos. 92-CR-351, 90-CR-1063, 2022 WL 17247005 (E.D.N.Y. Nov. 28, 2022), in which Judge Block granted early release to two defendants convicted of violent crimes supports his motion for a reduced sentence, (Def.'s Mot. 1–3); (2) the totality of circumstances that he has undergone point to the existence of extraordinary and compelling reasons that warrant a sentence reduction (*id.* at 3–5); (3) a reduction of his life sentence to thirty-five years is consistent with the purposes and objectives of 18 U.S.C. § 3553(a), (*id.* at 5–8); (4) additional information related to

3

SPA22

the murders of Burdi and Johnson support a reduced sentence, (Def.'s Reply 1–4); (5) other courts have reduced life sentences of those convicted of violent crimes and murders as part of organized crime and with "far greater culpability" than him, (*id.* at 4–8); and (6) sentencing disparities compel a reduction in his sentence, (*id.* at 8–9).

The government opposes the motion arguing that Giattino's motion contains no new facts or controlling law to justify the reversal of the Court's July 2022 Decision, and that Judge Block's decision in a separate case does not overcome the weight of the sentencing factors in 18 U.S.C. § 3553(a) or the absence of "extraordinary and compelling reasons" to warrant his early release.  (Gov't Opp'n to Def.'s Mot. ("Gov't Opp'n") 1–7, Docket Entry No. 738.)

## II.  Discussion

### a.  Standard of review

"[O]ther than the limited exceptions provided by statutes . . . courts are not free to modify sentences at will." *United States v. Martin*, 974 F.3d 124, 135 (2d Cir. 2020); *see United States v. Friedlander*, No. 20-CR-441, 2022 WL 280800, at *1 (E.D.N.Y. Jan. 31, 2022) ("A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." (quoting *United States v. Rabuffo*, No. 16-CR-148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020))).  "A district court may, in an exercise of its discretion, reduce an inmate's term of imprisonment by granting a motion brought under 18 U.S.C. § 3582(c)(1)(A) — the 'compassionate release' provision." *United States v. Van Der End*, No. 21-2079-CR, 2023 WL 193633, at *1 (2d Cir. Jan. 17, 2023).  "[T]here are three requirements that must be satisfied before a court can grant such relief" — namely, (1) "absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities"; (2) "a court must 'consider[] the factors set forth in [section] 3553(a) to the

extent that they are applicable'"; and (3) "the inmate must demonstrate that his proffered circumstances are indeed 'extraordinary and compelling' such that, in light of these [section] 3553(a) factors, a sentence reduction is justified under [section] 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed."[2] *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam) (alterations in original) (quoting 18 U.S.C. § 3582(c)(1)(A)); *see also, e.g.*, *United States v. Davis*, No. 21-716, 2022 WL 1320316, at *2 (2d Cir. May 3, 2022) (citing *Keitt*, 21 F.4th at 71); *United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) (per curiam); *United States v. Cummings*, No. 20-CR-3156, 2021 WL 4142844, at *1 (2d Cir. Sept. 13, 2021); *United States v. DiBiase*, 857 F. App'x 688, 688–89 (2d Cir. 2021); *United States v. Fernandez*, 853 F. App'x 730, 731–32 (2d Cir. 2021); *United States v. Roney*, 833 F. App'x 850, 852 (2d Cir. 2020).

"A court deciding a compassionate release motion can consider 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it].'" *Keitt*, 21 F.4th at 71 (alteration in original) (quoting *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020)); *Jones*, 17 F.4th at 374 n.3 ("[D]istrict courts are not confined to those reasons set

---

[2] "The statute sets out a fourth requirement: that the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Keitt*, 21 F.4th 67, 71 n.2 (2d Cir. 2021) (per curiam) (quoting 18 U.S.C. § 3582(c)(1)(A)). However, the Second Circuit has "held that, at present, the policy statement governing compassionate release — U.S.S.G. § 1B1.13 — governs only motions brought by the Director of the Bureau of Prisons, not those brought directly by inmates." *Id.* (citing *United States v. Brooker*, 976 F.3d 228, 236–37 (2d Cir. 2020)). The Sentencing Commission has adopted an amendment, effective November 1, 2023, to U.S.S.G. § 1B1.13 to reflect that 18 U.S.C. § 3582(c)(1)(A) authorizes a defendant to file a motion seeking a sentence reduction. *See* Adopted Amendments (Effective November 1, 2023) to the Federal Sentencing Guidelines 1, U.S. Sent'g Comm'n, https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 ("Section 1B1.13 is amended — by inserting at the beginning the following new heading: "(a) In General.—"; by striking "Bureau of Prisons under" and inserting "Bureau of Prisons or the defendant pursuant to. . . .").

forth by the [Bureau of Prisons] Director in evaluating compassionate release motions brought

by defendants and instead are free 'to consider the full slate of extraordinary and compelling

reasons that an imprisoned person might bring before them.'" (quoting *Brooker*, 976 F.3d at

235–37)); *United States v. Souza*, No. 20-3829, 2021 WL 3871262, at *1 (2d Cir. Aug. 31, 2021)

("[T]he Sentencing Commission's policy statements do not 'constrain district courts' discretion

to consider whether any reasons are extraordinary and compelling.'" (quoting *Brooker*, 976 F.3d

at 236)).

However, if a defendant cannot satisfy the applicable section 3553(a) sentencing factors,

then a district court "need not determine whether the defendant has shown extraordinary and

compelling reasons that might (in other circumstances) justify a sentence reduction." *Van Der*

*End*, 2023 WL 193633, at *1 (quoting *Keitt*, 21 F.4th at 73); *see Jones*, 17 F.4th at 374 (noting

that because "extraordinary and compelling reasons are necessary — but not sufficient — for a

defendant to obtain relief . . . , panels of this [c]ourt have, in non-precedential summary orders,

assumed the[ir] existence . . . but held that a district court's 'reasonable evaluation of the

[applicable] [s]ection 3553(a) factors' is 'an alternative and independent basis for denial of

compassionate release'" (quoting *United States v. Robinson*, 848 F. App'x 477, 478 (2d Cir.

2021))); *see also, e.g.*, *United States v. Cherry*, No. 21-913, 2022 WL 1210663, at *2 (2d Cir.

Apr. 25, 2022) ("[S]ection 3582(c) permits a district court to reduce a sentence only if, '*after*

considering the factors set forth in section 3553(a),' it 'finds that extraordinary and compelling

reasons warrant such a reduction.' Thus, . . . a finding that the section 3553(a) factors disfavor

early release is independently sufficient to deny a compassionate-release motion . . . .'" (first

quoting 18 U.S.C. § 3582(c)(1)(A); and then citing *Keitt*, 21 F.4th at 73)); *Souza*, 2021 WL

3871262, at *2 (affirming ruling that "even if [a defendant]'s medical conditions demonstrated

extraordinary and compelling reasons for release, 'the factors set forth in [section 3553(a)]

militate toward continued confinement'" (quoting *United States v. Bolino*, No. 06-CR-806, 2020

WL 4749807, at *2 (E.D.N.Y. Aug. 17, 2020))); *Roney*, 833 F. App'x at 853 ("We need not

decide whether [the appellant] has proffered an extraordinary and compelling reason that

warrants his release . . . because, even assuming *arguendo* that he has, we discern no abuse of

discretion in the district court's conclusion that release is nevertheless unwarranted upon

consideration of the [section] 3553(a) factors."); *United States v. Mattes*, No. 20-CR-2349, 2022

WL 260395, at *2 (2d Cir. Jan. 28, 2022) ("[A] district court's reasonable evaluation of the

[s]ection 3553(a) factors is an alternative and independent basis for denial of compassionate

release." (quoting *Jones*, 17 F.4th at 374)).

### b. The 18 U.S.C. § 3553(a) sentencing factors do not warrant a sentence reduction

Giattino argues that Judge Block's decision in *United States v. Russo* in which Judge

Block granted early release to two defendants convicted of violent crimes supports his motion for

a reduced sentence. (Def.'s Mot. 1–3 (citing *Russo*, 2022 WL 17247005).) In support, he argues

that Judge Block reduced the life sentences of Anthony Russo and Paul Moore, two defendants

with similar organized crime backgrounds to Giattino, to thirty-five years' imprisonment and

therefore, the Court should grant Giattino similar relief. (*Id.* at 1–3.) In addition, Giattino argues

that newly discovered information related to the murders of Burdi and Johnson support a reduced

sentence. (Def.'s Reply 1–4.) In support, Giattino contends that "[m]ultiple interviews with

former underboss or 'second in command' of the Gambino family and Government cooperator,

Salvatore 'Sammy the Bull' Gravano, has yielded new facts that this Court should consider,"

including that Giattino "did not directly participate in either murder and shoot and kill Burdi or

Johnson," nor "was he involved in the organizing or planning of either murder." (*Id.* at 1–4.)

7

SPA26

Giattino also argues that the totality of circumstances that he has undergone point to the existence of extraordinary and compelling reasons including "the 30 years of incarceration that he has served," "the harsh duration of his sentence," his "remarkable record of rehabilitation and good conduct in prison given his life sentence, and extremely low risk of recidivism," "service and mentorship to others," "strong family relationships," "dedication and commitment to his daughter," "support network and reentry plan," "age and serious medical conditions that make him vulnerable to more serious illness from COVID-19, and the deterioration of his health that will undoubtedly occur over the course of his life sentence given the aging process and effects of long-term incarceration," and "harsh and brutal conditions that he has suffered in prison during the pandemic." (Def.'s Mot. 3–4.)  He further argues that a reduction of his life sentence to thirty-five years "is consistent with the purposes and objectives of 18 U.S.C. § 3553(a)." (*Id.* at 5–8.)  Lastly, Giattino argues that other courts have reduced life sentences of those convicted of violent crimes and murders as part of organized crime and with "far greater culpability," (Def.'s Reply 4–8); and that sentencing disparities compel a reduction in Giattino's sentence, (*id.* at 8–9).

The Government argues that the Court should deny Giattino's motion because he presents no new evidence or controlling law. (Gov't Opp'n 2–3.)  In support, the Government argues that *Russo* is not controlling law because it was issued by a district court in this circuit and that in any event, *Russo* is not applicable to or persuasive as to the facts of this case.[3]  (*Id.*)  In addition,

---

[3] The Government frames Giattino's compassionate release motion as a motion for reconsideration, however the Court notes that Giattino does not indicate that his motion is for reconsideration of the Court's July 2022 Decision.  Therefore, the Court considers the motion as a new motion for compassionate release.

the Government argues that the section 3553(a) factors militate against early release. (*Id.* at 3–6.)

*Russo* is not binding on the Court. As the Court stated in the July 2022 Decision, "to the extent that Defendant relies on other district court decisions granting compassionate release to defendants whom he believes to be similarly situated, these cases are non-binding, and Giattino has not shown that his sentence creates unwarranted sentencing disparities in light of the intensely fact-specific rulings in those cases." (July 2022 Decision 8–9.) *Russo*, and other district court cases cited by Giattino, (*see* Def.'s Reply 4–6), present different factual circumstances than the ones present in this case. *See United States v. Brown*, No. 21-122, 2021 WL 5872940, at *2 (2d Cir. Dec. 13, 2021) (finding that defendant's reliance on "district court decisions granting compassionate release to defendants he deems to be similarly situated" was unavailing because those cases were "non-binding" and "present[ed] different factual circumstances"); *cf. United States v. Rigas*, 583 F.3d 108, 116 (2d Cir. 2009) ("[A] District Court must make an individualized assessment based on all the sentencing factors in § 3553(a).").

In addition, the Court does not find the additional information regarding Giattino's murder convictions compelling. As an initial matter, Giattino raises this argument for the first time in his reply brief, but the Court need not consider new arguments made in a reply brief. *See United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003) ("We will not consider an argument raised for the first time in a reply."); *United States v. Maciejewski*, 70 F. Supp. 2d 129, 137 (N.D.N.Y. 1999), *aff'd sub nom. United States v. Best*, 219 F.3d 192 (2d Cir. 2000) (declining to consider new arguments made in criminal post-trial motion). Nevertheless, Giattino's additional evidentiary submission does not warrant a sentence reduction. The evidence consists of a declaration from Salvatore "Sammy the Bull" Gravano, the underboss of the Gambino crime

9

SPA28

family, stating that to his knowledge, he has "never heard Vincent Giattino's name mentioned" in connection with the murders of Burdi and Johnson.  (Decl. of Salvatore Gravano ("Gravano Decl.") ¶¶ 5–9, annexed as Ex. A to Def.'s Reply, Docket Entry No. 744.)  Gravano's declaration regarding what he remembers hearing about murders that occurred almost thirty-five years ago does not cast doubt on Giattino's conviction.  Giattino was convicted of RICO murders after an extensive jury trial and significant evidence was presented against him and his co-defendants.  In addition, a jury convicted Giattino of six other serious crimes.  (PSR ¶¶ 1–13; J. of Conviction 1.)

Giattino's remaining arguments were previously made in his second motion for compassionate release.  The Court already addressed and rejected those arguments in its July 2022 Decision.  (July 2022 Decision 8–12.)  In the July 2022 Decision, the Court found that the section 3553(a) factors did not favor release, given the nature and seriousness of Giattino's offenses.  (*Id.*)  Giattino committed two heinous murders using guns equipped with silencers and trafficked narcotics as a devout member of Bonnano Crime Family.  (*See* PSR ¶¶ 16–22; Gov't's Opp'n 2.)  During sentencing, Judge Raggi acknowledged the "evidence about truly heinous crimes" and "murders that were committed in horrific manners."  (Sent'g Tr. 73:3–6.)  The life sentence that Judge Raggi imposed when considering "the horrible crimes committed," (*id.* at 73:8–10), plainly "reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A); *see United States v. Robinson*, No. 21-CR-1865, 2022 WL 2204126, at *3 (2d Cir. June 21, 2022) (holding that the district court did not abuse its discretion in finding that the defendant's "rehabilitation . . . was insufficient to justify relief"); *United States v. Vaughn*, No. 21-CR-1984, 2022 WL 2203857, at *1 (2d Cir. June 21, 2022) (affirming denial of compassionate release where district court

"considered [the defendant's] medical condition exposing him to risk from COVID-19, his good

behavior while incarcerated, and the support he will receive from his spouse upon release" but

"nonetheless reasonably concluded that reducing [the defendant's] sentence by more than six

years was unwarranted"); *United States v. Garcia*, No. 21-CR-1181, 2022 WL 2154675, at *2

(2d Cir. June 15, 2022) (affirming denial of compassionate release where district court

acknowledged the defendant's commitment to rehabilitation but concluded that his criminal

history and seriousness of his crime counseled against release); *United States v. Reyes*, No. 20-

3285, 2022 WL 1669388, at *1 (2d Cir. May 26, 2022) (affirming denial of compassionate

release where the "court acknowledged [the defendant's] efforts toward rehabilitation, [but]

nevertheless found that the section 3553(a) factors weighed heavily against a sentence reduction"

in light of the defendant's conduct); *United States v. Williams*, No. 22-4156, 2022 WL 1554649,

at *2 (2d Cir. May 17, 2022) (affirming denial of compassionate release where "[t]he district

court held that [the defendant] was not entitled to a sentence reduction under the [section]

3553(a) factors because of the seriousness of his offenses and because the danger to the

community outweighed any rehabilitative attempts, given the severity of his offenses which

included murder, distributing drugs, and participating in a gang"); *United States v. Stinson*, No.

20-CR-3744, 2021 WL 5499478, at *1 (2d Cir. Nov. 24, 2021) (affirming denial of

compassionate release where the district court noted the defendant's rehabilitation and "positive

contributions" to try to mentor other individuals and specifically young people to "get their lives

on track once they get out"); *Cummings*, 2021 WL 4142844, at *2 ("While we commend [the

defendant] for his efforts at self-improvement while incarcerated, we conclude that the [d]istrict

[c]ourt did not abuse its discretion when it considered these points and still found that the

[s]ection 3553(a) factors weighed against release."). Therefore, the Court finds that the section 3553(a) factors do not favor a sentence reduction.

### III. Conclusion

Accordingly, the Court denies Giattino's motion for compassionate release.

Dated: July 31, 2023
      Brooklyn, New York

SO ORDERED:


      _____/s/ MKB_____
      MARGO K. BRODIE
      United States District Judge

SPA31