# 23-6918

*To Be Argued By*:
STEPHANIE PAK

# United States Court of Appeals

## For the Second Circuit

◆◆

UNITED STATES OF AMERICA,

*Appellee,*

—against—

THOMAS PITERA, RICHARD DAVID, THOMAS CARBONE, ANTHONY FLOTTE, WILLIAM BRIGHT, FRANK GANGI, LLOYD MODELL, FRANK MARTINI, MANNY MAYA, MICHAEL CASSESSE, LOUIS MENA, ANGELO FAVARA, JUDITH HAIMAWITZ, RAY ALBERTINA, DENNIS MICHAEL HARRIGAN,

*Defendants,*

VINCENT GIATTINO,

*Defendant-Appellant.*

On Appeal From The United States District Court
For The Eastern District of New York

## BRIEF FOR THE UNITED STATES

BREON PEACE,
*United States Attorney,*
*Eastern District of New York*
*271-A Cadman Plaza East*
*Brooklyn, New York 11201*
*(718) 254-7000*

SUSAN CORKERY,
STEPHANIE PAK,
  *Assistant United States Attorneys,*
    *Of Counsel.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................iii

PRELIMINARY STATEMENT ..................................................... 1

STATEMENT OF FACTS ............................................................. 4

I.    Background ............................................................................ 4

    A.    Offense Conduct .................................................. 4

    B.    Sentencing ........................................................... 6

    C.    Post-Conviction Proceedings ............................ 7

        1.    First Compassionate Release Motion ........................... 7

        2.    Second Compassionate Release Motion......................... 8

        3.    Third Compassionate Release Motion ........................... 9

SUMMARY OF ARGUMENT ................................................. 12

ARGUMENT - THE DISTRICT COURT ACTED WELL
                WITHIN ITS BROAD DISCRETION IN
                DENYING GIATTINO'S MOTION ............................... 13

I.    Standard of Review ...................................................... 13

II.    Applicable Law ............................................................. 14

III.    Discussion...................................................................... 16

    A.    The District Court Did Not Abuse Its
            Discretion in Concluding That the
            Section 3553(a) Factors Weighed
            Against Giattino's Release .................................. 16

B.    Giattino's Attempts to Overturn This
      Ruling Are Unfounded ........................................ 18

      1.    Medical Conditions .................................... 18

      2.    Purported New Information ....................... 19

      3.    Disparity ................................................... 24

            a.    National ............................................ 24

            b.    Co-defendants ................................. 28

      4.    Rehabilitation ........................................... 31

CONCLUSION ................................................................ 34

iii

## TABLE OF AUTHORITIES

Page

### CASES

Chaffin v. Stynchcombe,
  412 U.S. 17 (1973) ................................................................ 30

Dillon v. United States,
  560 U.S. 817 (2010) .............................................................. 14

Edwards v. Artus,
  No. 06-CV-5995, 2009 WL 742735 (E.D.N.Y. Mar. 20, 2009) ............ 30

Musa v. United States,
  502 F. Supp. 3d 803 (S.D.N.Y. 2020) ................................ 30-31

Ramsey v. Graham,
  2009 WL 3233535 (E.D.N.Y. Oct. 7, 2009) ......................... 31

United States Amato,
  48 F.4th 61 (2d Cir. 2022) .......................................... 19, 20

United States v. Bennett,
  252 F.3d 559 (2d Cir. 2001) .............................................. 29

United States v. Borden,
  564 F.3d 100 (2d Cir. 2009) .............................................. 13

United States v. Brooker,
  976 F.3d 228 (2d Cir. 2020) ............................. 14, 15, 20, 32

United States v. Brown,
  No. 21-122, 2021 WL 5872940 (2d Cir. Dec. 13, 2021) ......... 24

United States v. Cavera,
  550 F.3d 180 (2d Cir. 2008) ........................................ 14, 18

United States v. Chambliss,
  948 F.3d 691 (5th Cir. 2020) ...................................... 13, 14

United States v. Clinton,
   820 F. App'x 34 (2d Cir. 2020) ........................................................... 29

United States v. Cruz,
   977 F.2d 732 (2d Cir. 1992) ............................................................... 30

United States v. DiBiase,
   857 F. App'x 688 (2d Cir. 2021) ......................................................... 18

United States v. Fine,
   982 F.3d 1117 (8th Cir. 2020) ........................................................... 19

United States v. Gotti,
   433 F. Supp. 3d 613 (S.D.N.Y. 2020) ................................................. 25

United States v. Harris,
   807 F. App'x 896 (11th Cir. 2020) ...................................................... 21

United States v. Henderson,
   858 F. App'x 466 (3d Cir. 2021) ......................................................... 20

United States v. Holloway,
   956 F.3d 660 (2d Cir. 2020) ............................................................... 13

United States v. Hunter,
   12 F.4th 555 (6th Cir. 2021) ........................................................ 22, 23

United States v. Ingram,
   721 F.3d 35 (2d Cir. 2013) ................................................................. 18

United States v. Jacques,
   No. 20-3276, 2022 WL 894695 (2d Cir. Mar. 28, 2022) ................ 20, 21

United States v. Jones,
   17 F.4th 371 (2d Cir. 2021) ......................................................... 15, 17

United States v. Kaufman,
   No. 04-40141-1-JTM, 2020 WL 4196467 (D. Kan. July 21, 2020) ...... 27

United States v. Keitt,
   21 F.4th 67 (2d Cir. 2021) .................................................................. 17

United States v. Levine,
    834 F. App'x 242 (7th Cir. 2021)..........................................................26

United States v. Logan,
    No. 1:96-CR-20-TBR, 2020 WL 730879 (W.D. Ky. Feb. 13, 2020)..... 27

United States v. Lorenzano,
    2021 WL 734984 (S.D.N.Y. Feb. 24, 2021) ...........................................30

United States v. MacLloyd,
    No. 21-1373, 2021 WL 5263594 (6th Cir. Sept. 20, 2021)...................21

United States v. Miller,
    855 F. App'x 949 (5th Cir. 2021)..........................................................20

United States v. Morales,
    No. 96-CR-317 (DC), 2021 WL 3056314 (S.D.N.Y. July 20, 2021) .....26

United States v. Montevecchi,
    No. 18-CR-15 (AKH), 2020 WL 3051335 (S.D.N.Y. June 8, 2020)......26

United States v. Musgraves,
    840 F. App'x 11 (7th Cir. 2021)............................................................20

United States v. Roman,
    No. 21-CR-185, 2022 WL 363909 (2d Cir. Feb. 8, 2022) .....................29

United States v. Roney,
    833 F. App'x 850 (2d Cir. 2020) ...........................................................16

United States v. Russo,
    643 F. Supp. 3d 325 (E.D.N.Y. 2022)...................................................24

United States v. Santiago,
    No. CR 05-32-3, 2021 WL 311877 (E.D. Pa. Jan. 29, 2021)...............28

United States v. Smith,
    982 F.3d 106 (2d Cir. 2020) .................................................................13

United States v. Thacker,
    4 F.4th 569 (7th Cir. 2021) ..................................................................22

United States v. Webster,
611 F. Supp. 3d 194 (E.D. Va. Feb. 10, 2020).......................................28

United States v. Wright,
991 F.3d 717 (6th Cir. 2021) ........................................................26-27

United States v. Wyatt,
No. CR97-3015-LTS, 2020 WL 3643467 (N.D. Iowa July 6, 2020).....27

Walker v. United States,
No. 16-21973-CIV, 2020 WL 2308468 (S.D. Fla. May 8, 2020)...........27

Whitman v. Am. Trucking Ass'ns,
531 U.S. 457 (2001)................................................................................22

Willingham v. United States,
805 F. App'x 815 (11th Cir. 2020)........................................................22

## STATUTES

18 U.S.C. § 3553(a)(6)..............................................................................29

18 U.S.C. § 3582(c)(1)(A) ............................................................ 14, 15, 21

28 U.S.C. § 2255 ......................................................................................22

28 U.S.C. § 994(t) ....................................................................................32

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

Docket No. 23-6918

———————————

UNITED STATES OF AMERICA,

<u>Appellee</u>,

-against-

THOMAS PITERA, RICHARD DAVID, THOMAS CARBONE,
ANTHONY FLOTTE, WILLIAM BRIGHT, FRANK GANGI, LLOYD
MODELL, FRANK MARTINI, MANNY MAYA, MICHAEL CASSESSE,
LOUIS MENA, ANGELO FAVARA, JUDITH HAIMAWITZ, RAY
ALBERTINA, DENNIS MICHAEL HARRIGAN,

<u>Defendants</u>,

VINCENT GIATTINO,

<u>Defendant-Appellant</u>.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

BRIEF FOR THE UNITED STATES

<u>PRELIMINARY STATEMENT</u>

Defendant-appellant Vincent Giattino appeals from a

judgment entered on July 31, 2023, in the United States District Court

for the Eastern District of New York (Brodie, J.) denying Giattino's

2

motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).
(Br. 2, 8).[1]

Giattino, who has served approximately 31 years of a life
sentence for racketeering and murder, among other crimes, argues that
the district court abused its discretion in denying his motion for
compassionate release and a sentence reduction by failing to
appropriately consider: (1) his age and health conditions; (2) his attack
on the validity of his underlying conviction; (3) his circumstances in
comparison to defendants who have been granted compassionate release;
(4) efforts he believes are indicative of rehabilitation and family support,
(5) the factors set forth in 18 U.S.C. § 3553(a); (6) reduction of sentences
of defendants in other organized crime cases; and (7) the sentences his
codefendants received.

---

[1] "Br." and "A" refer to Giattino's brief and appendix,
respectively. "PSR" refers to the Pre-Sentence Investigation Report, filed
separately under seal. References to "DE" are to CM/ECF docket entries
in <u>United States v. Giattino</u>, 90-CR-424 (E.D.N.Y.). Unless otherwise
noted, all case quotations omit internal quotation marks and citations
and accept alterations.

3

As shown below, these arguments are meritless, and the district court's order should be affirmed.

STATEMENT OF FACTS

I.   Background

     A.   Offense Conduct

     La Cosa Nostra ("this thing of ours"), also known as the Mafia,

is comprised of 24 organized crime families, including the Bonanno Crime

Family ("BCF").  (PSR ¶ 14).  "Made members" are required to pledge

absolute loyalty to the family upon penalty of death.  (Id. ¶¶ 14-15).

     Giattino was an associate of BCF and the Lucchese Crime

Family and became a member of BCF in the early 1980s.  Giattino was a

member of co-defendant Thomas Pitera's crew between 1986 and 1990

when Giattino's offense conduct occurred.  (Id. ¶ 16).  During his service

in Pitera's crew, Giattino engaged in, among other things, the

distribution of marijuana and cocaine.  (Id. ¶ 17).  Giattino reported

directly to Pitera and supplied Pitera, as well as other higher members,

with a share of the profits derived from the narcotics distribution.  (Id.

¶ 16).

     In addition to engaging in narcotics trafficking, Giattino also

committed murders as a member of BCF.  Specifically, on September 12,

1987, Giattino and Pitera, using guns equipped with silencers, shot and

5

killed Phyllis Burdi.  (Id. ¶ 19).  On the day of the murder, Burdi and an associate of Pitera's traveled to an apartment in Manhattan to purchase cocaine.  Upon their arrival, Pitera's associate called Pitera to inform him of their whereabouts.  (Id.).  Upon arriving at the apartment, Giattino, Pitera, and a third person shot and killed Burdi.  Once Burdi was dead, Pitera dismembered her body and buried it in Staten Island.  (Id.).  Pitera had decided to murder Burdi because he believed that she had administered a fatal drug overdose to his wife and had failed to obtain medical attention for her.  (Id.).

In August 1988, in order to please Gambino Crime Family boss John Gotti and to increase their stature in the BCF, Giattino and Pitera lured Wilfred Johnson, a Federal Bureau of Investigation ("FBI") informant, to Brooklyn, where they shot and killed him.  (Id. ¶ 20).  This murder stemmed from an individual who requested Pitera's assistance in resolving a dispute involving the Gambino Crime Family, leading Pitera to conspire with his crew to murder Johnson.  On August 29, 1988, after luring him to Brooklyn, Pitera and Giattino shot and killed Johnson.  (Id.).

In spring 1990, Giattino grew concerned about being apprehended for the Johnson murder. Giattino met with a high-ranking member of the Lucchese Crime Family, telling the Lucchese Family member that he was worried about Pitera openly bragging about killing Johnson. Giattino asked the Lucchese Family member to help support his wife should he flee. (Id. ¶ 21). Shortly after this conversation, Giattino became a fugitive. (Id.).

Giattino was eventually apprehended by the FBI in July 1991 in Miami, Florida, following the arrests of a large portion of Pitera's crew on June 4, 1990. (Id. ¶ 22). Giattino had false identification documents in his possession at the time of his arrest, which he subsequently tried to discard. (Id.).

On November 5, 1992, Giattino was convicted following a jury trial before The Honorable Reena Raggi of the racketeering, murder, narcotics and firearms offenses described herein. (A 40, 273; DE 276).

B.   Sentencing

On February 26, 1993, Judge Raggi sentenced Giattino principally to five concurrent life sentences on the racketeering, conspiracy to murder, and narcotics distribution counts; two 10-year

terms of imprisonment on two additional conspiracy to murder counts, to run concurrently with the life sentences; and one 30-year term of imprisonment on the use of a firearm with a silencer count to run consecutively to the other counts; to be followed by 23 years of supervised release. Giattino was additionally ordered to pay a $200,000 fine. (DE 270).

C.   Post-Conviction Proceedings

1.   First Compassionate Release Motion

On September 2, 2020, Giattino filed a pro se motion for compassionate release, arguing that his health conditions of obesity, asthma, hypertension and diabetes, his rehabilitation, and his desire to have a relationship with his adult daughter warranted his release. (See A 79-96). The government opposed the motion in its entirety. (See A 138-51).

On November 19, 2020, the district court denied Giattino's motion for compassionate release, holding that the Section 3553(a) factors did not warrant early release. (See A 216-21). The district court considered the threat posed by COVID-19 and the "heightened risk of complications faced by individuals, such as Defendant, with 'obesity,

hypertension, asthma and diabetes.'" (A 220). It also "applaud[ed] Defendant's 'life history and characteristics, and his rehabilitation and transformation over the last [thirty] years.'" (<u>Id.</u>). Nonetheless, the court held that these reasons did not outweigh the Section 3553(a) factors to warrant early release. "Due to the gravity of [Giattino's] crimes," including "two heinous murders and traffick[ing] narcotics as a devout member of BCF," the court found that the sentence of life imprisonment "reflect[ed] the seriousness of the offense, . . . promot[ed] respect for the law, and . . . provide[d] just punishment for the offense." (<u>Id.</u> (quoting 18 U.S.C. § 3553(a)(2)(A)).

2.   <u>Second Compassionate Release Motion</u>

On February 14, 2022, Giattino filed a second motion for compassionate release, principally arguing that the "trial penalty" resulting from his decision to proceed to trial and the sentencing disparities between him and his co-defendants who pled guilty warranted his release. (A 223, 225, 228; <u>see</u> <u>generally</u> A 222-41). Giattino also reiterated his arguments about his health conditions, his rehabilitation, and his relationship with his daughter. (A 222-23). The government opposed the motion in its entirety. (<u>See</u> A 254-64).

On July 26, 2022, the district court again denied Giattino's motion for release, holding that early release was inconsistent with the sentencing factors in 18 U.S.C. § 3553(a). (A 273-85). With respect to Giattino's new arguments, the district court rejected the fact that Giattino received a longer sentence than his co-defendants as a basis for reducing his sentence and was similarly "unpersuaded" by Giattino's argument that he suffered a trial penalty for not accepting the government's plea offer. (A 281). The district court further stated that "to the extent that Defendant relies on other district court decisions granting compassionate release to defendants whom he believes to be similarly situated, these cases are non-binding." (A 280-81).

### 3.   Third Compassionate Release Motion

On November 25, 2022, Giattino filed a third motion for compassionate release under the First Step Act, principally citing Judge Frederic Block's decision in United States v. Russo, 643 F. Supp. 3d 325 (E.D.N.Y. 2022). (A 286-94). Giattino argued in his third motion and his reply brief that he was similarly situated to the two defendants in Russo, who received reduced sentences after initially being sentenced to life imprisonment for racketeering or murder offenses. (A 286-88). Giattino

argued that the totality of his circumstances, such as his health, age, and supposed rehabilitation and information he believed cast doubt on his conviction amounted to extraordinary and compelling reasons for a reduction in his sentence. (A 288-89). Giattino also argued that a sentence reduction would be consistent with the goals and objectives of 18 U.S.C. § 3553(a). (A 290-94). The government opposed the motion in its entirety. (See A 326-32).

On July 31, 2023, the district court denied Giattino's motion for release for the third time, holding again that early release was inconsistent with the sentencing factors in 18 U.S.C. § 3553(a). (A 355-66). With respect to Giattino's reliance on Russo, the court noted that Russo is not binding precedent and that Giattino had failed to show that his sentence created unwarranted sentencing disparities, given the fact-specific rulings made by Judge Raggi at sentencing. (A 363-64). Furthermore, the court disagreed that the facts in Giattino's case and Russo were similar. (A 363). The court also noted that it did not find the new information that Giattino suggested cast doubt on his conviction to be convincing. (Id.). As a procedural matter, the court pointed out that this new information was only raised in Giattino's reply brief to his third

compassionate release motion, and that the court need not consider it. (Id.). Nonetheless, the court found unpersuasive Giattino's valuation of the Gambino Crime Family underboss, Salvatore "Sammy the Bull" Gravano, attesting that he was unaware that anyone had mentioned Giattino in connection with the Burdi or Johnson murders. (A 363-64). Finally, the court reiterated that in its two prior decisions on Giattino's motions for compassionate release, it already had considered and rejected the arguments regarding the totality of Giattino's circumstances arising to extraordinary and compelling reasons for a reduction in his sentence. (A 364).

## SUMMARY OF ARGUMENT

The district court properly denied Giattino's motion for compassionate release based upon its analysis of the 18 U.S.C. § 3553(a) factors. The court correctly found that Giattino had provided neither new controlling case law nor any other reason that tipped the Section 3553(a) factors towards early release. As the district court noted, the gravity and the nature of Giattino's offenses, which included "two heinous murders" weighed against release in considering the Section 3553(a) factors. (A 364). The court did not abuse its wide discretion in reaching this conclusion, and its decision should not be disturbed on appeal.

## ARGUMENT

## THE DISTRICT COURT ACTED WELL WITHIN ITS
## BROAD DISCRETION IN DENYING GIATTINO'S MOTION

I.  Standard of Review

When a district court denies a defendant's motion to reduce his sentence, this Court typically reviews that decision for abuse of discretion.  See United States v. Holloway, 956 F.3d 660, 664 (2d Cir. 2020).  De novo review is appropriate only if the district court's denial is based on statutory interpretation.  Id.  A court abuses its discretion if it "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions."  United States v. Borden, 564 F.3d 100, 104 (2d Cir. 2009).

Where a district court bases its denial of a compassionate release motion on its application of the Section 3553(a) factors, a court of appeals employs the same deference to the district court's determination as it does in reviewing the district court's imposition of sentence — that is, abuse of discretion.  See, e.g., United States v. Chambliss, 948 F.3d 691, 693 (5th Cir. 2020); see also United States v. Smith, 982 F.3d 106, 110-11 (2d Cir. 2020) (per curiam).  Thus, "reversal is not justified where

14

the appellate court might reasonably have concluded that a different sentence was appropriate." Chambliss, 948 F.3d at 693; accord United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (this Court should not "substitute [its] own judgment for the district court's on the question of what is sufficient to meet the § 3553(a) considerations in any particular case"). "[A]s in all sentencing matters," a district court has "broad" discretion in deciding a motion for compassionate release. United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).

## II.   Applicable Law

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." Dillon v. United States, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)).   One such circumstance is set forth in 18 U.S.C. § 3582(c)(1)(A), which states that a court "may reduce the term of imprisonment . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A).  This Court has held that "Application Note 1(D) [of U.S.S.G. § 1B1.13] cannot

constrain district courts' discretion to consider whether any reasons [presented in a motion for compassionate release] are extraordinary and compelling." Brooker, 976 F.3d at 236. As such, the balancing of the facts and circumstances relevant to a compassionate release motion is "left to the sound discretion of the trial court." Id. at 238.

However, and significantly, a district court may reduce a term of imprisonment under Section 3582(c)(1)(A) only where both extraordinary and compelling reasons warrant it, and the Section 3553(a) factors support it. 18 U.S.C. § 3582(c)(1)(A); see United States v. Jones, 17 F.4th 371, 374 (2d Cir. 2021) (per curiam) ("[E]xtraordinary and compelling reasons are necessary — but not sufficient — for a defendant to obtain relief under § 3582(c)(1)(A)."). That is, when determining whether to grant compassionate release under Section 3582(c)(1)(A), a district court must also consider the factors set forth in Section 3553(a), which include, inter alia,

> the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the

16

defendant; and the need to avoid unwarranted
sentencing disparities.

United States v. Roney, 833 F. App'x 850, 852 (2d Cir. 2020) (citing 18
U.S.C. § 3553(a)).

III. Discussion

The district court did not abuse its considerable discretion by
denying compassionate release to Giattino.  After receiving numerous
submissions from Giattino and the government, including the
defendant's immunization record, disciplinary record, and individualized
needs plan, the court properly decided that Giattino's release was
unwarranted.  The court's decision was based on Giattino's failure to
satisfy the Section 3553(a) factors for his release and failure to identify
controlling case law mandating a different result.  This Court should
affirm the district court's decision as it acted properly within its broad
scope of discretion.

A.   The District Court Did Not Abuse Its Discretion
     in Concluding That the Section 3553(a) Factors
     Weighed Against Giattino's Release

As this Court recently explained, "a court may reduce a
sentence under § 3582(c)(1)(A) only if" the Section 3553(a) factors support
release, and the defendant shows "extraordinary and compelling

17

reasons." <u>United States v. Keitt</u>, 21 F.4th 67, 73 (2d Cir. 2021) (per curiam).  Accordingly, "[i]t follows that if a district court determines that one of those conditions is lacking," compassionate release is not warranted.  <u>Id.</u>; <u>accord</u> <u>Jones</u>, 17 F.4th at 374 (noting that unpublished Second Circuit decisions have also held that, even assuming the existence of extraordinary and compelling circumstances warranting release, "a district court's reasonable evaluation of the Section 3553(a) factors is an alternative and independent basis for denial of compassionate release").

Here, the district court found (three times) that the Section 3553(a) factors do not favor a sentence reduction, let alone early release.  (A 355-66, 273-85, 216-21).  In particular, the court cited Giattino's "two heinous murders using guns equipped with silencers" that he committed as a "devout member of the Bonnano Crime Family" in determining that the Section 3553(a) factors weighed against his release.  (A 364).  In so ruling, the court acted well within its broad discretion — particularly given the seriousness of his offense conduct. In asserting otherwise, Giattino asks this Court to substitute its own judgment for that of the district court and to reweigh the Section 3553(a) factors, as discussed more fully below.  Under well-established precedent,

18

this Court should decline to do so. See United States v. Ingram, 721 F.3d 35, 37 (2d Cir. 2013) (stating that the appellate court will not "substitute [its] own judgment for the district court's on the question of what is sufficient to meet the § 3553(a) considerations in any particular case" (quoting Cavera, 550 F.3d at 189; United States v. DiBiase, 857 F. App'x 688, 689 (2d Cir. 2021) ("For questions of the appropriate balancing of the Section 3553(a) factors, we provide wide latitude to district courts.").

B. Giattino's Attempts to Overturn This Ruling Are Unfounded

Giattino launches a scattershot attack on the district court's well-grounded decision, citing his medical state, new evidence, disparity, and rehabilitation. None of these attacks has merit.

1. Medical Conditions

On appeal, Giattino largely repeats his assertions that he suffers from various medical conditions that place him at risk of contracting a severe case of COVID-19. (Br. 9-11). [2] But the district court considered Giattino's age and his medical conditions, including obesity,

---

[2] Medical records from the Bureau of Prisons indicate that while Giattino does have serious medical conditions, they are manageable, and he remains in stable condition. (See DE 730-3 (Ex. C)). And, as the district court noted, Giattino is also vaccinated. (A 282).

hypertension, asthma, and diabetes, and twice found that the defendant's requested relief would be inconsistent with the Section 3553(a) factors. (A 220, 281-82, 364). The district court underscored that it also seriously considered the threat that the pandemic posed to incarcerated individuals and the heightened risks for those who have conditions such as Giattino's and reached the same conclusion. (A 281 ("Although the Court takes seriously the threat posed by the pandemic to incarcerated individuals and the heightened risk of complications faced by individuals, such as Giattino[,] . . . [his] medical conditions [did] not warrant" the requested relief.)). That Giattino disagrees with the weight that the district court gave to his health and risks of contracting COVID-19 is an insufficient basis for challenging the district court's decision. United States v. Amato, 48 F.3d 4th 61, 66 (2d Cir. 2022) (the defendant's disagreement with the weighing of the Section 3553(a) factors did not amount to an abuse of discretion by the district court).

2. Purported New Information

Second, Giattino's attempts to attack his sentence with purported new information do not establish an extraordinary and compelling reason for his release. Specifically, Giattino argues that

compassionate release is warranted because interviews with Salvatore "Sammy the Bull" Gravano, the former underboss who acted as the second in command of the Gambino Crime Family and later became a cooperator, suggested that Giattino was not directly involved in the Burdi or Johnson murders.  (Br. 8, 15-18).

This Court ought not consider this argument because Giattino may not challenge the validity of his conviction or sentence in a motion for compassionate release.

Contrary to Giattino's insistence and reading of this Court's decision in Brooker, in evaluating a compassionate release motion, a district court does not have the discretion to consider new evidence attacking the conviction pursuant to Brooker.  See Amato, 48 F.4th at 66 ("Nothing in [Brooker] permits defendants to circumvent the procedural limitations of § 2255 by repackaging actual innocence arguments into the § 3553(a) factors").  As this Court stated in United States v. Jacques, No. 20-3276, 2022 WL 894695 (2d Cir. Mar. 28, 2022):

> claims regarding the validity of [a defendant's] conviction and sentence . . . [are] not a proper basis for a § 3582(c)(1)(A) motion.  See United States v. Fine, 982 F.3d 1117, 1118-19 (8th Cir. 2020) (explaining that because "[a] federal inmate

generally must challenge a sentence through a § 2255 motion . . . a post judgment motion that fits the description of a motion to vacate, set aside, or correct a sentence should be treated as a § 2255 motion"). This view has been summarily adopted in other circuits. See United States v. Musgraves, 840 F. App'x 11, 13 (7th Cir. 2021) ("Compassionate release is a mechanism for inmates to seek a sentence reduction for compelling reasons, not for remedying potential errors in a conviction."); United States v. Henderson, 858 F. App'x 466, 469 (3d Cir. 2021) ("A previously rejected claim of sentencing error could never qualify as an 'extraordinary and compelling reason' for compassionate release."); United States v. Miller, 855 F. App'x 949, 950 (5th Cir. 2021).

Id. at *2; accord United States MacLloyd, No. 21-1373, 2021 WL 5263594, *3 (6th Cir. Sept. 20, 2021); United States v. Harris, 807 F. App'x 896, 898 (11th Cir. 2020).]

Permitting defendants to raise challenges to the validity of their convictions and sentences under 18 U.S.C. § 3582(c)(1)(A)(i) "would allow the compassionate release statute to operate in a way that creates tension with the principal path and conditions Congress established for federal prisoners" to do so, as "embodied in the specific statutory scheme authorizing post-conviction relief in 28 U.S.C. § 2255 and accompanying provisions." United States v. Thacker, 4 F.4th 569, 574 (7th Cir. 2021);

see also Willingham v. United States, 805 F. App'x 815, 816-17 (11th Cir. 2020) (per curiam) (rejecting claim that an appellant was not subject to the limitations on second or successive Section 2255 motions as a result of the First Step Act).

The "vague and amorphous phrase 'extraordinary and compelling reasons' in a narrow sentence reduction statute does not remotely suggest that Congress intended to effect the monumental change" of permitting defendants to abrogate the restrictions on second or successive Section 2255 motions by repackaging such claims as "extraordinary and compelling reasons" under the First Step Act. United States v. Hunter, 12 F.4th 555, 566 (6th Cir. 2021). Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions – it does not ... hide elephants in mouseholes." Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 468 (2001). "There is no clear intention that Congress intended to allow prisoners to avoid the specific habeas restrictions by resorting to compassionate release." Hunter, 12 F.4th at 567. This Court should "not read § 3582(c)(1)(A)'s general permission in a way that would swallow the more specific prohibition or permission for habeas relief." Id. at 568.

While this procedural defect is sufficient to dispose of Giattino's argument, substantively, Giattino's arguments are meritless and do not demonstrate any extraordinary and compelling reason for his release. As Judge Brodie pointed out, Gravano's declaration regarding what he recalled hearing about murders that occurred approximately 35 years ago does not call Giattino's conviction into question, especially considering that Giattino's conviction came after an extensive jury trial in which the jury considered "significant evidence" sufficient to convict Giattino of six other serious crimes. (A 363-64).

Giattino nonetheless argues that Gravano's statements "substantially mitigate" Giattino's involvement in the Burdi and Johnson murders. (Br. 15). Specifically, Giattino argues that Gravano's May 2023 declaration that he had never heard Giattino's name mentioned in conversations about the murders equates to evidence that Giattino did not directly organize, plan, or participate in murdering, shooting, or killing Burdi or Johnson. (Id.). Giattino grossly over-values the significance of Gravano's interviews towards his culpability. The new information that purportedly casts doubt on his conviction provides little to nothing to refute the evidence presented at a lengthy trial that firmly

established his guilt — a trial which included eyewitness testimony and other co-conspirators' statements about Giattino's culpability for the murders.

    3.  <u>Disparity</u>

        a.  <u>National</u>

Giattino argues that because similarly situated defendants, or defendants who have purportedly committed more egregious crimes, have been granted compassionate release, he too should be granted the same relief. (Br. 19-23). In particular, Giattino argues that <u>United States v. Russo</u>, 643 F. Supp. 3d 25 (E.D.N.Y. 2022), compels a different result based on perceived similarities between the circumstances in <u>Russo</u> and his own case.

Giattino's reliance on <u>Russo</u> is misplaced, as it was issued by another district court and is not controlling law. See <u>United States v. Brown</u>, No. 21-122, 2021 WL 5872940, at *2 (2d Cir. Dec. 13, 2021) ("To the extent that [the defendant] relies on district court decisions granting compassionate release to defendants he deems to be similarly situated . . . those cases are non-binding."). The district court correctly reiterated the same in its third denial of Giattino's compassionate release motion

(A 363). Additionally, the district court disagreed with Giattino and found that <u>Russo</u>, in fact, provides "different factual circumstances than the ones present in this case." (<u>Id.</u>). In its denial, the district court reprised its ruling from the second denial of Giattino's motion, noting that in general, "to the extent that Defendant relies on other district court decisions granting compassionate release to defendants whom he believes to be similarly situated, these cases are non-binding, and Giattino has not shown that his sentence creates unwarranted sentencing disparities in light of the intensely fact-specific rulings in those cases." (<u>Id.</u>).

Indeed, courts routinely deny compassionate release motions filed by prisoners who have committed very serious crimes despite the presence of other factors that weighed in favor of release. <u>See, e.g.</u>, <u>United States v. Gotti</u>, 433 F. Supp. 3d 613 (S.D.N.Y. 2020) (denying compassionate release to 79-year-old former acting boss of the Gambino crime family who ordered the death of a Government cooperator even though he "established that he suffers from a plethora of serious, debilitating, and progressive medical conditions"); <u>United States v. Montevecchi</u>, No. 18-CR-15 (AKH), 2020 WL 3051335, at *1-3 (S.D.N.Y.

June 8, 2020) (denying compassionate release to 74-year-old member of the Genovese Crime Family who engaged in extortion by intimidation even though he had medical conditions that were COVID-19 risk factors); United States v. Morales, No. 96-CR-317 (DC), 2021 WL 3056314, at *4-5 (S.D.N.Y. July 20, 2021) (denying compassionate release to defendant who was involved in a string of robberies that culminated in the murder of a police officer even though he demonstrated extraordinary and compelling reasons for a sentence reduction based on his health conditions); United States v. Levine, 834 F. App'x 242, 243 (7th Cir. 2021) (affirming denial of compassionate release for 78-year-old defendant who hired a hit man to kill three family members even though he had served 30 years and was in declining health); United States v. Wright, 991 F.3d 717, 718-19 (6th Cir. 2021) (affirming denial of compassionate release for defendant who trafficked cocaine, stole airplanes for a drug cartel, and murdered a man for money even though his illnesses were collectively "terminal," noting that "district courts have wide latitude to deny compassionate release based on the seriousness of the underlying offense"); Walker v. United States, No. 16-21973-CIV, 2020 WL 2308468, *1 (S.D. Fla. May 8, 2020) (denying compassionate release to defendant

convicted of multiple counts of carjacking and firearms offenses "[d]espite the severity of [defendant's] alleged medical condition"); United States v. Wyatt, No. CR97-3015-LTS, 2020 WL 3643467, at *5, *8 (N.D. Iowa July 6, 2020) (denying compassionate release to 76-year-old defendant with a long history of armed bank robberies even though he was "experiencing a serious deterioration in physical health because of the aging process" and fit five of the CDC's categories of people whose medical conditions place them at increased risk of severe illness from COVID-19); United States v. Kaufman, No. 04-40141-1-JTM, 2020 WL 4196467, at *1 (D. Kan. July 21, 2020) (denying compassionate release to 83-year-old defendant whose conduct included forced labor, involuntary servitude, and sexual abuse of vulnerable, mentally disabled persons even though, based on his medical conditions, he showed extraordinary and compelling reasons for a sentence reduction); United States v. Logan, No. 1:96-CR-20-TBR, 2020 WL 730879, *1-3 (W.D. Ky. Feb. 13, 2020) (denying compassionate release to 81-year-old defendant who was sentenced to life for setting a hotel on fire, killing four and injuring 15 others, even though he, according to BOP, was experiencing deteriorating mental and physical health that substantially diminished his ability to function in a

correctional environment); <u>United States v. Santiago</u>, No. CR 05-32-3, 2021 WL 311877, at \*1, \*5 (E.D. Pa. Jan. 29, 2021) (denying compassionate release to 78-year old who kidnapped a man for ransom, leading to a shootout with law enforcement, even though he had significant medical conditions and difficulty walking without assistance); <u>United States v. Webster</u>, 611 F. Supp. 3d 194, 205 (E.D. Va. Feb. 10, 2020) (denying compassionate release to defendant who committed two murders even though he was suffering from terminal cancer and had received a compassionate release from state prison).

### b.   <u>Co-defendants</u>

Giattino attributes his life sentence as a punishment for exercising his right to a trial in comparison to his co-defendants who were convicted after a guilty plea. (Br. 4-5).  While Section 3553(a) instructs courts to consider "the need for unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," district courts are not required to compare the sentences of co-defendants.  18 U.S.C. § 3553(a)(6); <u>see United States v. Roman</u>, No. 21-CR-185, 2022 WL 363909, at \*1 (2d Cir. Feb. 8, 2022) (affirming denial of compassionate release and explaining "there is no

requirement that a district court consider or explain sentencing disparities among codefendants"); United States v. Clinton, 820 F. App'x 34, 37 (2d Cir. 2020) ("We have repeatedly held that a district court is not required to consider such disparities.").

Additionally, courts continue to reject the concept of the "trial penalty" in the abstract, stating that there is nothing unjust about a sentence imposed after trial as opposed to a sentence imposed after a plea agreement. See United States v. Bennett, 252 F.3d 559, 562 n.5 (2d Cir. 2001) ("[T]he lower sentence after a guilty plea reflects a reduction from a sentencing norm ascertained independent of the procedure by which guilt is ascertained. A sentence imposed upon a defendant who stands trial is that norm; it is not an enhancement above the norm as a cost of standing trial."). The fact that Giattino received a longer sentence after trial than that offered to him as part of a plea agreement does not present a reason for release. A defendant in plea bargaining circumstances will often be "confronted with the certainty or probability that, if he determines to exercise his right to plead innocent and to demand a jury trial, he will receive a higher sentence than would have followed a waiver of those rights." Chaffin v. Stynchcombe, 412 U.S. 17, 30-31 (1973); see

30

Edwards v. Artus, No. 06-CV-5995, 2009 WL 742735, at *6 (E.D.N.Y. Mar. 20, 2009) ("[D]efendants routinely make and bear the consequences of the same wager that [defendant here] made."). This Court has recognized that this difference in sentencing is "lawful, rejecting the contention that withholding such leniency would be impermissible punishment." United States v. Cruz, 977 F.2d 732, 734 (2d Cir. 1992). Giattino therefore cannot now use his own decision to pursue a trial as a basis for early release. See United States v. Lorenzano, 2021 WL 734984, at *4 (S.D.N.Y. Feb. 24, 2021) (denying compassionate release, finding that defendant's "assertion that he was unfairly punished for exercising his right to a jury trial and refusing to plead guilty along with his co-defendants [was] without merit"); Musa v. United States, 502 F. Supp. 3d 803, 812 n.9 (S.D.N.Y. 2020) (Sullivan, J.) (denying compassionate release and noting that defendant "would be hard pressed to argue" that a sentence enhancement, which was "likely the product of [defendant] having exercised his right to trial," presented an extraordinary circumstance); cf. Ramsey v. Graham, 2009 WL 3233535, at *5 (E.D.N.Y. Oct. 7, 2009) (rejecting the concept of the "trial penalty" because defendant had "rejected favorable pre-trial offers, against the advice of

counsel, and chose the hazard of trial, cognizant of his exposure to stiffer penalties if convicted").

In reality, Giattino's sentence is longer than those of his co-defendants because it appropriately addresses his level of culpability in committing the Burdi and Johnson murders, according to the Section 3553(a) factors. At sentencing, Judge Raggi stated that the life sentence appropriately "reflect[ed] the seriousness of the offense, . . . promote[d] respect for the law, and . . . provide[d] just punishment for the offense" given the "murders that were committed in horrific manners," which Judge Raggi further described as "truly heinous." (A 283, 364 (quoting Sentencing Tr. at 73)).

Put simply, Giattino's sentence is not a trial penalty but a direct consequence of his own involvement in the Burdi and Johnson murders and his own decision to exercise his right to trial.

### 4. Rehabilitation

The district court also correctly found that Giattino's efforts at rehabilitation "do not warrant a modification of [his] sentence in light of the seriousness of his offenses." (A 282-83). The court commended Giattino for his post-incarceration conduct such as his mentorship to

other inmates, his good conduct in prison, his ability to maintain strong and close relationships with his family, and his support network and reentry plan. (A 282). Nonetheless, it found, like the sentencing court, that these efforts could not overcome the horrific nature and seriousness of his crimes. (A 283). This conclusion was not error because, by statute, rehabilitation alone cannot support compassionate release. See 28 U.S.C. § 994(t); Brooker, 976 F.3d at 237-38.

On appeal, Giattino points to the district court's acknowledgement of Giattino's "tremendous" rehabilitation in support of his argument for release. (Br. 2). Based on Bureau of Prisons records, however, Giattino has engaged in education courses only sporadically since his incarceration, with a total enrollment of five classes from 1991 to 2017. (DE 730-3 (Ex. C)). Thus, the court was generous to acknowledge Giattino's rehabilitative efforts, given that they are few and far between.

Finally, despite Giattino's professed rehabilitation and remorse, he has never truly shown remorse or taken responsibility for his actions in committing two brutal murders as a member of the BCF. On appeal, Giattino states that he is "extremely remorseful for his past

actions and who he was, and lives with deep regret and guilt." (Br. 2). The attestations from his fellow inmates and his family similarly and vaguely cite his remorse for his prior decisions or actions. (Br. 30, 32, 34-36, 40). Giattino regrets his choices and the lifestyle he led but does not acknowledge or apologize for committing two murders in which the victims were lured to their deaths. Giattino invites this Court to equate regretting choices and a lifestyle with taking responsibility for one's actions — this Court should decline to do so.

<u>CONCLUSION</u>

For the reasons stated above, the order should be affirmed in all respects.

Dated:     Brooklyn, New York
           April 8, 2024

                              Respectfully submitted,

                              BREON PEACE,
                              <u>United States Attorney</u>,
                              <u>Eastern District of New York</u>.

                      By:     _____/s/_____
                              STEPHANIE PAK
                              Assistant U.S. Attorney


SUSAN CORKERY,
STEPHANIE PAK,
<u>Assistant United States Attorneys</u>,
       (<u>Of Counsel</u>).

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Second Circuit Rule 32.1(a)(4) because the brief contains 5,864 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated:  Brooklyn, New York
         April 8, 2024

                              /s/
                         SUSAN CORKERY
                         Assistant U.S. Attorney